IRA H. BROOKS, Respondent, *v.* ELVIRA HARISON et al., as Administrators, etc., Appellants.

The complaint, in an action for libel, alleged the writing and sending by defendant of a letter which contained the matter claimed to be libelous. At the beginning of the trial and before any evidence had been given, defendant objected to any evidence, on the ground that the letter was a privileged communication, which objection was overruled. At the close of plaintiff's evidence a motion was made for a nonsuit on the ground "that if the letter was not a privileged communication the proof showed that plaintiff had sustained no damage * * *, and the letter was not libelous on its face." *Held*, that the question as to whether the letter was a privileged communication was not effectively raised ; that it was

* *Post.* p. 112.

not presented by the motion for nonsuit, and the preliminary objection was unavailing, as there were then no facts before the court upon which it could be determined.

The complaint also charged the speaking of alleged slanderous words, which were substantially that plaintiff was offering for sale to a cheese factory, the milk of his dairy which was poisonous and impure, by reason of his suffering a horse having a sore upon its neck, discharging filthy and impure matter, to run in the pasture with his cows, and drink from the same water and share the same food. Defendant claimed upon the trial, upon the testimony of experts called by him, that the necessary consequence of the facts stated was to render the milk impure and poisonous. *Held,* that assuming this to be true, the words charged a misdemeanor (§§ 1, 2, chap. 544, Laws of 1864) and were actionable *per se.*

It appeared that three different cheese factories refused plaintiff's milk, assigning as a reason the charge made by defendant. *Held,* that assuming the words were not actionable *per se,* there was sufficient evidence of special damage to authorize the submission of the question to the jury.

The court charged in substance that if the jury found the alleged wrong to have been malicious and intentional, they could give exemplary damages, in determining which they might consider the injury to plaintiff's feelings and have respect to the force of example. *Held* no error.

(Argued December 7, 1882 ; decided January 16, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, May 4, 1882, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial.

This was an action for libel and slander ; it was brought originally against Richard F. Harison, who died after the argument of his appeal at General Term, and before the decision, and the present defendants were substituted.

As to the libel, the complaint charged defendant falsely and maliciously wrote and mailed a letter " to A. Aldrich & Company and others at the city of Boston and State of Massachusetts, and therein falsely and libelously uttered and published of and concerning the plaintiff the following false and libelous words, namely : Ira Brooks has a sick and diseased horse on his farm ; he owns and has a sick and diseased horse in his possession. That horse discharges from his head and neck filthy and poisonous virus or matter. Brooks kept his horse on his farm

with his dairy of cows. The milk he produced was tainted. The milk he got from his cows was tainted, filthy and poisonous and wholly unfit for food. The virus and matter discharged from his horse poisoned the milk produced from his cows, and the butter and cheese made from the milk of his cows was filthy, poisonous, rotten, rancid, sour and not fit for food; and the butter and cheese that he has offered for sale was filthy, rancid, poisonous and unfit for food and infected by the poisonous matter from such horse. That Brooks kept his sick horse on his farm with his dairy of cows; that while the horse was with the cows and while occupying the same pasture with the cows, the horse discharged from his head and neck large quantities of offensive and poisonous virus; that while the horse was with the said cows the said Brooks knew that his horse was sick with a contagious disease and that the horse discharged from his head and neck offensive, poisonous and filthy virus or matter. That while the horse was sick and discharging such matter Brooks was engaged in making butter from his cows and selling and offering to sell such butter as good and wholesome food, which Brooks knew to be infected, diseased and poisonous, rotten, rancid and sour, and wholly unfit for food. That the butter that he had sent to Boston to said A. Aldrich & Company was infected with the disease and virus of the said horse, was filthy, poisonous, rotten, rancid and sour, unfit for use and consumption and unwholesome as food, and the said A. Aldrich & Company and others were warned not to sell the same or any part thereof, or offer the same or any part thereof for sale for the reasons aforesaid; thereby intending to charge that the said plaintiff had knowingly sold and exposed for sale impure, adulterated and unwholesome milk, butter and cheese; and had knowingly, maliciously and criminally adulterated milk with the view of offering the same for sale; and had knowingly, maliciously and criminally kept cows for the production of milk, butter and cheese for market and for sale in an unhealthy condition; and had knowingly, maliciously and criminally sold and offered for sale filthy, poisonous and infected milk, butter,

cheese and food." The slanderous words charged were of a similar import.

At the opening of the trial, defendant's counsel objected to any evidence being received, on the ground that the counts of the complaint charging slander did not allege the speaking of words actionable *per se*, or that by the utterance of the words plaintiff had suffered any special damage ; that the letter referred to was a privileged communication. The objection was overruled and exception taken. The further material facts appear in the opinion.

*A. X. Parker* for appellants. Plaintiff's evidence failed to establish the speaking of any words by defendant charging plaintiff with the commission of an offense indictable under any statute of the State or at common law, nor were the words spoken by plaintiff slanderous *per se.* (2 Broom and Hadley's Com. 460 [Am. ed.]; 2 Colby's Crim. Law, 77; *Moses* v. *Mead,* 1 Denio, 378; *Wright* v. *Hart,* 18 Wend. 440, 464; *Vicars* v. *Wilcox,* 8 East, 1; *Maybee* v. *Fisk,* 42 Barb. 326; *Matthews* v. *Beach,* 5 Sandf. 256; *Baker* v. *Wilkins,* 3 Barb. 220; *Van Rensselaer* v. *Dole,* 1 Johns. Cas. 279; *Roberts* v. *Champlain,* 14 Wend. 120; *Anonymous,* 60 N. Y. 262; *Terwilliger* v. *Wands.* 17 id. 54, 57; *Kelly* v. *Partington,* 5 B. & Ad. 695; *Bassil* v. *Elmer,* 65 Barb. 627; *Kendall* v. *Stone,* 50 N. Y. 14; *Daily* v. *Dean,* 5 Barb. 297; *Linden* v. *Graham,* 1 Duer, 670.) Whether defendant made the statements or wrote the letter in the conscientious discharge of what he believed to be his official duty, and whether either of the statements or letter was privileged were questions for the jury. (*Clapp* v. *Develin,* 35 N. Y. Supr. Ct. 170; *Lewis* v. *Chapman,* 16 N. Y. 369, 374; *Armsby* v. *Douglass,* 37 id. 477, 479, 484; *Klinck* v. *Colby,* 46 id. 427, 433–4; *Hamilton* v. *Eno,* 81 id. 116, 124.)

*Leslie W. Russell* for respondent. The utterance that plaintiff sold or offered to sell milk which had become poisonous or deleterious as food, or drew such milk to the

factory to be manufactured into cheese, or into butter is a slanderous charge, actionable *per se* as an assertion of offering for sale or use unwholesome food knowingly. (*Hemenway* v. *Wood*, 1 Pick. 524; *Brooker* v. *Coffin*, 5 Johns. 187; *Demarest* v. *Haring*, 6 Cow. 76; Bishop's Crim. Law, §§ 940, 945; 1 R. S. [6th ed.] 1105, §§ 34, 35, 36, 37; *Williams* v. *Holbridge*, 22 Barb. 396; *Hewett* v. *Mason*, 24 How. Pr. 366; 2 Starkie on Slander, 108; *Burgess* v. *Boucher*, 8 Mod. 240; *Sherwood* v. *Chase*, 11 Wend. 38; *Chapman* v. *Smith*, 13 Johns. 78.) The burden is always on the party uttering the alleged slander, to show that he deprived the charge of its force by an explanation, which necessarily limited his meaning, so as to be innocuous. (*Maybee* v. *Fisk*, 42 Barb. 326; *Van Akin* v. *Caler*, 48 id. 58; *Philips* v. *Barber*, 7 Wend. 439; *Kennedy* v. *Gifford*, 19 id. 296; *Van Auken* v. *Westfall*, 14 Johns. 233; *Gorham* v. *Ives*, 2 Wend. 534; *Rundell* v. *Butler*, 7 Barb. 260.) It is slander to charge dishonesty, or turpitude, or unfitness, by reason of fault upon a business man concerning his business, or vocation, and no special damage need be proven. (*Fowles* v. *Bowen*, 30 N. Y. 20; *Dolan* v. *Van Rensselaer*, 1 Johns. Cas. 330; *Mott* v. *Comstock*, 7 Cow. 654; *Sewell* v. *Catlin*, 3 Wend. 291; *Carpenter* v. *Dennis*, 3 Sandf. 305.) Even if the words spoken were not actionable *per se*, they were uttered concerning the plaintiff in his vocation and business, and as a matter of fact his ability to manufacture cheese and butter without let or hindrance, or to use or sell his milk was so seriously impaired and prevented that even had he been unable to prove actual damages in dollars and cents, such might properly be inferred from the circumstances. (*Keenholts* v. *Becker*, 3 Denio, 346; *Olmstead* v. *Miller*, 1 Wend. 506; *Olmstead* v. *Brown*, 12 Barb. 657; *Hartley* v. *Herring*, 8 Term R. 130; *Moore* v. *Meagher*, 1 Taunt. 39.) Written words published of a man which impute to him injustice, or impropriety, or which tend to expose him to hatred, contempt, contumely or disgrace, are actionable. (*Cooper* v. *Stone*, 24 Wend. 433–440; *Riggs* v. *Denniston*, 3 Johns. Cas. 198; Townshend on Slander, § 176;

*Gorham* v. *Ives*, 2 Wend. 534 ; *White* v. *Delavan*, 17 id. 49.) There is no justification for claiming that the letter was privileged. (*Kelly* v. *Partington*, 4 B. & Ad. 700.) The letter was libelous *per se*, and the words spoken were actionable *per se*, as imputing a crime. They were also actionable *per se*, because spoken of the plaintiff in his business and vocation in such a way that their natural import would occasion damage, and were actionable as producing special damages under the proofs in the case. (*Boynton* v. *Boynton*, 43 How. 383.) The request to rule that plaintiff was not entitled to recover for injury to his feelings was properly ·refused. (*Canning* v. *Williamstown*, 1 Cush. 451 ; *Kendrake* v. *McCrary*, 11 Ga. 603 ; *Life* v. *Eisenlord*, 32 N. Y. 237 ; *Badgley* v. *Decker*, 44 Barb. 577 ; *Swift* v. *Dickerman*, 31 Conn. 285 ; *Taylor* v. *Church*, 8 N. Y. 461 ; *Tillotson* v. *Cheetham*, 3 Johns. 56 ; *Terwilliger* v. *Wands*, 17 N. Y. 54 ; *Wilson* v. *Gait*, id. 442 ; *Ford* v. *Jones*, 62 Barb. 484.) The exception to the ruling that punitive damages might· be given as a warning to others to prevent a repetition is correct.·(*Taylor* v. *Church*, 8 N. Y. 461 ; *Tillotson* v. *Cheatham*, 3 Johns. 56 ; *Cook* v. *Ellis*, 6 Hill, 467 ; *Burr* v. *Burr*, 7 id. 207 ; *Kendall* v. *Stone*, 2 Sandf. 269.)

FINCH, J. The recovery in this action was for libel and slander. That the letter to Aldrich & Co. was libelous on its face is not now disputed. Whether it was true or not was a question of fact upon which the jury have passed, and upon evidence sufficient at least to put their conclusion beyond our review. The only other defense asserted is that of privileged communication. The question, however, was not effectively raised. At the beginning of the trial, before any evidence had been given, and in the entire·absence of the facts and circumstances attending and characterizing the letter, the defendant objected to any evidence being given, on the ground that· the letter was a privileged communication, which objection was overruled and an exception taken. It is not even now contended that this ruling was wrong, made at a time when there

was nothing before the court upon which the question sought to be raised could be determined, but it is sought to broaden the motion for a nonsuit, made at the close of plaintiff's case, by making it relate back to these preliminary objections and transferring them by an intendment or inference into the grounds of nonsuit actually stated. These were, so far as the count for libel is concerned, that "no proof had been given to sustain it; that if the letter was not a privileged communication, the proof showed that plaintiff had sustained no damage by reason of it; and the letter was not libelous on its face." This objection not only does not raise the question now sought to be argued, but practically concedes and abandons the point; and nowhere else during the progress of the trial was it again referred to. No ruling was sought or obtained from the court as to whether the letter was written upon excusable occasion, and was privileged in view of the circumstances in which it originated. That question only was for the court, and was not raised in such manner as to be now before us. The question of good faith and belief in the truth of the statement was for the jury. (*Hamilton* v. *Eno*, 81 N. Y. 122.) We may, therefore, dismiss any further consideration of the letter except as it becomes connected with questions which concern likewise the alleged slanderous words.

The defendant contends that these were not actionable *per se.* They consisted substantially of a charge that the plaintiff was selling or offering for sale to a cheese factory the milk of his dairy which was poisonous and impure by reason of his suffering a mare, having a sore upon its neck discharging filthy and putrid matter, to run in the pasture with his cows, and drink from the same water, and share in the same food. The court did not charge that these words constituted an accusation of an indictable offense, unless the jury found as a fact that the impurity and poisonous quality of the milk was a necessary consequence of the facts related and detailed. Assuming that to be true, and the defendant so claimed upon the testimony of experts called by himself, the accusation became one of selling and offering for sale poisonous and impure milk, rendered so by

causes which necessarily produced such impurity and which were wholly within the plaintiff's control. Such an act constituted a misdemeanor. (Laws of 1864, chap. 544, §§ 1 and 2.) One who shall " knowingly sell or exchange, or expose for sale or exchange, any impure, adulterated or unwholesome milk," or " who shall keep cows in a crowded and unhealthy condition, or feed the same on food that produces impure, diseased or unwholesome milk," is guilty of a misdemeanor. The accusation here was that the plaintiff had delivered to the cheese factory poisonous milk, was preparing to do so again, and was giving his cows food and water contaminated with poisonous and unwholesome elements, and the charge did relate to the production of unwholesome milk and its sale or exchange as such. The ruling was certainly not erroneous as against the defendant.

It is contended that the accusation was not slanderous because explanatory words were used which showed that there was an expression of opinion merely as to the consequences of plaintiff's action. But what are called the explanatory words were the very seat of the slander and the origin of its force and power to harm. Instead of an explanation tending to modify and render innocuous the charge of selling impure milk, it was one which strengthened and intensified the charge by stating the facts from which, on the theory we are now considering, such impurity followed as a natural and necessary consequence. We find no error, therefore, in the ruling of the court as to the actionable character of the slanderous words.

But since, under the charge of the court, the jury were at liberty to reach their conclusion upon the ground that the words spoken were not actionable *per se*, because the impurity of the milk was not the necessary consequence of the exposure of the cows to poisonous food and drink, it becomes necessary to consider the case in connection with the subject of special damage. Upon this latter hypothesis the court charged that special damage must be shown, and held on the motion for a nonsuit, that *prima facie* it had been established. It was shown that three different cheese factories refused plaintiff's milk, as-

signing as a reason the charge made by Harison and his threat to institute proceedings if his warning was disregarded. There was enough in these facts to require a submission of the question to the jury.

It is, however, again said that explanatory words were used, and that Harison gave merely an opinion founded upon facts, and since we are to assume now that the impurity of the milk was not an inevitable result of the facts detailed, it follows that others might, and the proofs show that they did, reach a contrary conclusion. But these facts tended to show that the milk was impure. They certainly cast suspicion upon it, in and of themselves; and if falsely stated, were calculated to do the plaintiff as much injury, and harm his reputation as a man and in his business as severely, as if the impurity of the milk he sold was a certain instead of a probable result. So that outside of mere opinion, facts were stated which naturally led to the injurious inference, which were intended to point that way, which were followed by the inference distinctly drawn, and which accomplished the meditated result. Enough was shown to warrant the conclusion of special damage sustained.

But it is argued that the superintendents of the cheese factories refused plaintiff's milk because of Harison's threat to prosecute and not because they believed the milk to be impure. But the threat to prosecute got all its force from the facts narrated as its basis. It showed a possible foundation on which complaint could rest, and a door open to an opinion possibly different from their own, if, as the appellant claims, they really did believe in the purity of the milk. How far they were influenced by the threat alone, and how far by the facts detailed is very much a matter of speculation. It is enough that the only legal proposition which the defendant asked the court to charge on this branch of the case was charged as requested, the learned judge saying that the plaintiff could not recover for a refusal occasioned by Harison's threats.

The remaining exceptions are aimed at the charge relating to punitive or vindictive damages. That such might be awarded in a case of this character is not denied, and what was said of

the injury to plaintiff's feelings and of a warning to others had relation to exemplary damages alone. It was not pretended that those considerations were elements of the actual damages founded upon the idea of compensation, but when the jury got beyond that, they might if they found the wrong to be malicious and intentional give exemplary damages, in determining which they might consider the injury to plaintiff's feelings and have respect to the force of the example. We think the charge was not erroneous in these respects. (*Taylor* v. *Church*, 8 N. Y. 452; *Hunt* v. *Bennett*, 19 id. 175.) For such purpose the jury must necessarily be left to consider all the facts of the case.

While the damages awarded by the jury may seem and may be disproportioned to the offense, and their conclusion upon the facts not beyond criticism, we cannot interfere with the judgment which they exercised.

The judgment should be affirmed, with costs.

All concur, except RAPALLO, J., absent.

Judgment affirmed.