FRANK E. BUTLER AND ANNIE E. BUTLER, HIS WIFE, v. THE HOBOKEN PRINTING AND PUBLISHING COMPANY.

Submitted December 9, 1904—Decided November 13, 1905.

1. On a rule to show cause, a new trial may be granted where an error has resulted in a verdict for excessive damages, although such error was not the subject of an exception at the trial.

2. In an action for libel or slander, damages cannot be assessed for physical sickness alleged to have been caused by the libel or slander.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON, GARRETSON and REED.

For the plaintiff, *McCarter, Williamson & McCarter.*

For the defendant, *Bedle, Edwards & Thompson.*

The opinion of the court was delivered by

REED, J. This is an action for damages for libel defaming the plaintiff. The plaintiff was a professional rifle expert. Her professional name is Annie Oakley. As such she traveled with Buffalo Bill's show for a number of years.

The "Hoboken Observer," published by the defendant, published an article headed "Downfall of a Famous Woman Sharpshooter. Annie Oakley, a Victim of Drugs, Sent to Jail." It was asserted that Annie Oakley was a prisoner in the Harrison street police court; that she was arrested charged with robbery; that she pleaded guilty and was fined; that according to the police she was addicted to the use of drugs; that she was formerly with Buffalo Bill's show; that she was then destitute and forced to accept shelter from an old colored man named Curtis; that a justice of the peace sent her to Bridewell for twenty-five days.

For the injury occasioned by this publication this action was brought and a verdict of $3,000 recovered. This hearing is upon the return of a rule to show cause why this verdict should not be set aside and a new trial granted.

It appears that the same item was sent out from Chicago and was published in a number of newspapers throughout the country. The trial justice very properly charged that the defendant was liable for only that portion of the entire injury resulting from these publications as could be attributed particularly to the defendant. The trial justice also properly overruled testimony to show the particulars of actions brought against other newspapers for publishing a similar libel and the amount of damages received in some of those suits. There is, however, another phase of the case which seems to call for more consideration. The declaration charged, as the result of the publications, that the defendant was greatly injured in health and obliged to go to great expense for procuring physicians and medicines. The trial justice charged that the defendant was responsible for so much of the injury to her health and resultant disability to follow her profession as was produced by this article. No exception was taken to this part of the charge, nor was the attention of the trial justice called to this language—nor, indeed, was any modification of this language suggested. The counsel for the defendant now insist that injury to health is not a legitimate element of damage in actions for defamation of character. Even if this insistment is well grounded, as no exception was taken at the trial to the charge, the defendant is not *strictissimi juris* entitled to now raise that point. When an exception is taken to an instruction or to the admission of illegal evidence the court, upon motion for a new trial, will not set aside the verdict if it appears that justice has been done. So, on the other hand, a verdict may be set aside when the rules of damages adopted are erroneous or testimony concerning them irrelevant, although no objection was made at the trial. *Stew. Dig.* 838, 839, §§ 10, 11, 40; *Lippincott* v. *Souder,* 3 *Halst.* 161, 165; *Hatfield* v. *Central Railroad Co.,* 4 *Vroom* 251.

The "Hoboken Observer" is a local newspaper circulating in the southern part of Hudson county.

It is impossible to resist the conclusion that the element of ill health and its alleged consequences must have figured most influentially in inducing the jury to award $3,000 as damages.

The injury caused by this publication to the private or professional reputation of the plaintiff, she following her profession in Europe as well as the United States, could hardly have been, under the circumstances, equivalent to $3,000. Indeed, in her testimony, the money feature of special importance was her inability to shoot because of nervous prostration caused by this and other publications. By reason of this she says she was compelled to abandon an arrangement for the season of 1903 by which she was to receive $150 a week. So it would seem clear that this factor must have entered into the assessment of damages returned by the jury. If, therefore, it be true that injury to the health of a libeled person and the consequences flowing therefrom is not a legitimate ground for assessing damages, a new trial should be directed, although the error crept into the trial without objection.

The case upon the authority of which the defendant's insistence is grounded is *Terwilliger* v. *Wands,* 17 *N. Y.* 54. That was an action for slander charging the plaintiff with unchastity. The special damages proved were impaired health and mental trouble caused by the spoken words. The words spoken were not actionable in themselves, and so it required proof of some special damages to support the action. It was held that ill health, although actually produced by the slander, was not, in a legal view, a natural or ordinary consequence of the slander. This case was decided in 1858. Two years later the English Court of Exchequer, in *Allsop* v. *Allsop,* 5 *Hurlst. & N.* 534, was called upon to deal with an action for slander in which damages were claimed for sickness caused by a false charge of unchastity. Chief Baron Pollock said: "There is no precedent for any such special damage as that laid in the declaration being

made a ground of action so as to render actionable what would otherwise not be so; * * * this particular damage depends upon the temperament of the party affected, and it may be laid down that illness arising from the excitement which the slanderous language may produce is not that sort of damage which forms a ground of action."

In *Lynch* v. *Knight,* decided in the House of Lords in 1864, and reported in 9 *H. of L. Cas.* 593 and in 8 *Eng. Rul. Cas.* 382, 388, Lord Brougham, in giving judgment, remarked: "I think Allsop *v.* Allsop was well decided, and that mere mental suffering or sickness supposed to be caused by the speaking of words not actionable in themselves, would not be special damages to support the action." Lord Wensleysdale said: "Mental pain or anxiety the law cannot value, and does not pretend to redress when the unlawful act complained of causes that alone; though where a material damage occurs and is connected with it, it is impossible a jury in estimating it should altogether overlook the feelings of the party interested. For instance, when a daughter is seduced, however deeply the feelings of the parent may be affected by the wicked act of the seducer, the law gives no redress unless the daughter is also a servant, the loss of whose services is a material damage which a jury has to estimate; when juries estimate that they usually cannot avoid considering the injured honor and the wounded feelings of the parent."

Each of the three cases mentioned was an action for slander, and the slander charged was for speaking words which were not actionable *per se,* and only became such if followed by special damage. The question in each case was in respect to the kind of special damage which would give rise to a cause of action. These cases seem to settle the rule that neither mental suffering nor physical sickness will alone do so in that class of actions.

The present action belongs to a different class. The words for which damages are sought not only charged the defendant with a crime, and so were actionable *per se,* but they were printed and as a libel were similarly actionable.

In this class of actions for defamation of character, upon proof of the publication, damages are presumed to have accrued; therefore, in such actions, it is not necessary for the plaintiff in his declaration to plead special damages in order to support his action. If he desires to prove special damages he must plead them, it being the rule that no evidence shall be received of any loss or injury which the plaintiff sustains from the words used unless it be specially stated in the declaration, and if named it must be proved as stated. *2 Saund. Pl. & Ev., marg. p.* 927.

At this point arises the important question whether the range of what may be pleaded or proved as damages is wider in this class of actions than in those which depend entirely upon proof of special damages.

Mr. Odgers, after stating the rule respecting special damages in the first class, if they have been properly pleaded, proceeds to say that the law is not .quite so strict in actions where the words are actionable *per se,* and that although when the words are not actionable *per se,* mental distress, illness, &c., do not constitute special damages, yet where the words are actionable *per se* the jury may take such matters into their consideration in according damages. *Odg. Lib. & S.* His authority for this statement is the remark of Lord Wensleysdale, in *Lynch* v. *Knight, supra,* already quoted. Now, it is to be observed that Lord Wensleysdale did not say that mental sufferings are to be regarded as a subject for special damages when the words are actionable *per se.* What he did say was that a jury, if permitted to return damages for a legal cause of action, would be influenced by the considerations mentioned. It is conceded, however, that while mental suffering will not support an action for words not actionable *per se,* nevertheless damages for mental suffering may be assessed in actions for defamation actionable *per se.* In Massachusetts such damages for mental distress are regarded as general and are recoverable without being specially pleaded. *Chesley* v. *Tompson,* 137 *Mass.* 136; *Lombard* v. *Lennox,* 155 *Id.* 70.

In New York such damages seem to be regarded as punitive, and assessable only in cases where there is proof of actual malice. *Brooks* v. *Harison,* 91 *N. Y.* 83, 92; *Warner* v. *P. P. Co.,* 132 *Id.* 181; *Van Ingen* v. *Star Co.,* 1 *App. Div.* 429; *S. C.,* affirmed in 157 *N. Y.* 695. The right of a libeled person to recover damages as a compensation for her feelings was recognized by our Court of Errors and Appeals in the case of *Knowlden* v. *Guardian Printing Co.,* reported in 40 *Vroom* 670. Indeed, mental anguish, mortification and anger are the necessary results from defamation of character, and so may be said to be legally inferred from the fact of defamation.

But when physical injury is predicated of the defamatory words spoken, it cannot be said that it is either the necessary or natural consequence therefrom. In rare instances physical sickness may result from mental worry, but it is an exception to the rule. Even then, it is a step removed from the first result and cannot be said to be the proximate consequence of the defamatory words. The entire absence of any precedent, so far as I have examined the question, for the assessment of damages in this class of cases for physical ailment is a remarkable feature in the administration of the law, if such right to damages exists. There is an abundance of authority supporting the assessment of damages for mental anxiety, but none for damages for physical sickness. The same may be said of the other class of actions alluded to by Lord Wensleysdale—actions for seduction based upon the fiction of loss of services. By inveterate usage, the relations of master and servant having been established, the parent is to be permitted to recover for injured feelings; but it admittedly rests upon the ground of inveterate usage, and not upon any logical basis. *Sedg. Dam.* 542.

In the present case the damages resulting from physical illness which the jury was permitted to consider did not stop with the mere compensation for such physical pain and expenses for medical treatment. The important loss resulting from her broken health was that she was compelled by

reason of it to abandon her profession for a season, at a loss of $150 a week. This alleged loss, it is perceived, did not result from failure to procure engagements by reason of loss of professional standing caused by the defendant's words. The loss of employment, therefore, was not the result of injured reputation, but of physical inability to shoot. This inability is traced back to mental worry which resulted from knowledge by the plaintiff that she had been defamed.

I am of the opinion that damages for loss of earnings so resulting, as well as for physical distress, are too remote.

Nor can the amount of damages found be vindicated upon the ground that they might have been exemplary. The absence of actual malice was admitted by the plaintiff upon the trial and the right to recover punitive damages was disclaimed.

The rule should be made absolute.