## ENQUIRER CO. v. JOHNSTON.

(Circuit Court of Appeals, Seventh Circuit. March 5, 1896.)

No. 234.

1. LIBEL—DAMAGES—IMPUTATION OF UNCHASTITY.

Upon the trial of an action brought by a woman for a libel, involving a charge of unchastity, the plaintiff was permitted to show that she had three young children, and the court, in charging the jury, instructed them that, in determining the amount of damages, they might take into consideration plaintiff's family relations, the injury to her feelings, and her sense of shame and dishonor; that they should award her such sum as would fully and fairly compensate her for all the wrongs and injury inflicted; and added that they should remember that the reputation of a woman, and especially a mother having children, for chastity, is a thing of inestimable value. The admission of the evidence and the latter portion of the charge were assigned as error. *Held* no error.

2. LIBEL—EVIDENCE—IDENTIFICATION OF PLAINTIFF.

In an action for libel, an acquaintance of plaintiff may testify that, upon reading the libelous publication, he understood it to refer to plaintiff.

3. SAME—EVIDENCE—SIMILAR PUBLICATIONS.

Upon the trial of an action for a libel published in a newspaper, it is not error to exclude evidence of similar publications in other papers; the inquiry being so framed as to include publications which might be subsequent to or copied from that sued on.

4. SAME—NEWSPAPERS—DEGREE OF CARE.

It is not error, in an action for a libel published in a newspaper, to charge the jury that the greater extent of circulation makes the libels of a journalist more damaging, and imposes special duties, as to care to prevent the risk of such mischief, proportionate to the peril.

In Error to the Circuit Court of the United States for the District of Indiana.

Plaintiff in error is the proprietor of a daily newspaper published in Cincinnati. On August 27, 1892, Mrs. Annie M. Johnston, defendant in error, was, and for some months had been, a resident of the city of Logansport, in the state of Indiana. She was a widow, with three small children, and she resided at an hotel in Logansport, kept by one J. D. Johnston, a brother of her deceased husband, and called the "Johnston House." On the day next after the date mentioned, the following matter appeared in said newspaper:

"Miss Scull Told on Her Landlord. His Wife Got Irate, and the Housekeeper was Bounced. A Peculiar Hotel Strike.

"Special Dispatch to the Enquirer.

"Logansport, Indiana, August 27.—A decided novelty in the way of a strike occurred here to-day, and the Johnston Hotel, one of the city's leading hostelries, has been almost forced out of business for the time on its account. All of the female help have quit. The city being notoriously short in this line already, the proprietor is experiencing considerable trouble in filling the twenty-five vacancies existing. The trouble grew out of the discharge of the housekeeper, Miss Emma Scull, which occurred last evening. Miss Scull came here from Leavenworth, Kan., several years ago, and has made an enviable reputation by the neat and painstaking manner in which she conducted affairs at the Johnston. In an interview this morning with the proprietor and landlord, J. D. Johnston, the Enquirer correspondent learns that the housekeeper was fired for making trouble between himself and wife. Mrs. Johnston is away on a visit with her brother, Thomas Dugan, of Springfield, Ohio. During her absence the housekeeper kept Mr. Johnston under surveillance, and this week wrote his wife a letter accusing him of undue intimacy with the wife of a deceased brother. Mrs. Johnston, according to the landlord's own words, 'being naturally of a jealous disposition, immediately

became enraged upon receipt of this letter, and wrote back, raising h——l.'
It didn't take Mr. Johnston very long, after getting this letter, to see the
housekeeper and give her her time. The other girls, upon learning of her dis-
charge, also packed their personal effects, and walked out in a body, with
their Saratogas under their arms."

The issue of the paper containing this was sold on the streets of Logans-
port by newsboys, and at news stands, and elsewhere throughout the country.
Defendant in error brought suit for libel in the circuit court of Cass county,
Ind. The cause was transferred to the circuit court of the United States for
the district of Indiana, and there she recovered a judgment for $4,000.

Addison C. Harris and Alex. Murray, for plaintiff in error.

W. P. Kappes and M. Winfield, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

SHOWALTER, Circuit Judge (after stating the facts as above):
Defendant in error testified as a witness on the trial. She was asked
by her counsel, "How many children have you?" and answered that
she had three, aged, respectively, $6\frac{1}{2}$, $5\frac{1}{2}$, and $3\frac{1}{2}$ years. In his charge
to the jury, the court said: "In determining the amount of damages,
you may take into consideration her family relations and her social
standing, the injury, if any, to her feelings, her wounded sensibilities,
and her sense of shame and dishonor." This direction and the fore-
going question and answer are assigned as errors, the point of objec-
tion being that the jury were thereby given "the right to consider,
as an element of damage sustained by plaintiff," the fact that she had
three children of the ages stated.

The hurt by a libel is primarily to reputation, meaning the esteem
in which the person libeled is held by others. Involved in this is the
pain or suffering personal to the injured party, to wit, the conscious-
ness of degradation attaching to himself and those whose lot in life is
determined by his own. It is not the sense of this record that the
children of defendant in error were to be compensated. The chil-
dren were part of her environment. Her relation to them was such
as might make the hurt to herself more acute and permanent, such
as might render her more sensitive to and more helpless against the
wrong done. This court cannot hold that the fact objected to was
improperly brought to light, especially in view of the peculiar char-
acter of the publication in question. Barnes v. Campbell, 60 N. H.
27; Bolton v. O'Brien, 16 L. R. Ir. 97, 110; Chesley v. Tompson, 137
Mass. 136; Klumph v. Dunn, 66 Pa. St. 141; 3 Suth. Dam. p. 259,
§ 1210; Id. p. 2599, § 1214. The matter quoted from the charge, in
connection with the remainder of the charge as quoted below, could
not have misled the jury.

The trial judge said, in concluding his charge:

"In determining the amount of damages, you may take into consideration
her family relations and her social standing, the injury, if any, to her feelings,
her wounded sensibilities, and her sense of shame and dishonor. You may
also take into consideration the publicity given to the accusation, and all the
circumstances in evidence bearing on the character and extent of her injury,
and award her such sum as shall fully and fairly compensate her for all the
wrongs and injury inflicted upon her by such publication. In determining
what amount would be just and proper, you may take into consideration any
circumstance in the evidence which tends to show that the defendant was

not actuated by actual malice, or that it acted in good faith, in the honest belief that it was publishing the truth, in making the publication, as matters in mitigation of the damages. You should, however, remember that the reputation of a woman for chastity, and especially the reputation of a mother, having children, for chastity, is a thing of inestimable value, and that any injury done to such reputation by the publication of false and libelous charges ought to be compensated for by the assessment of damages which should be a full and adequate satisfaction for all the wrong and injury inflicted upon her."

Counsel for defendant (plaintiff in error) then said:

"I will ask your honor to state the rule that in this case the jury must not, in assessing damages, in any event allow anything by way of vindictive or punitive damages."

And the court added:

"I will do so, although I think it is covered in my charge. While it is your duty to return, if you should return a verdict for the plaintiff, a verdict for such sum as shall fully and fairly and completely compensate her for all the injuries that she has suffered, or will suffer in the future, you are not permitted to assess anything by way of punishment, or vindictive damages; simply compensatory damages."

Error is assigned upon the following words, taken from the foregoing portion of the charge: "You should, however, remember that the reputation of a woman for chastity, and especially the reputation of a mother, having children, for chastity, is a thing of inestimable value." This sentence did not involve any proposition of law. In view of the context, it could not have been understood by the jury as anything more than an observation, sentiment, or opinion which the judge saw fit to express. That to the normal woman, especially if she be in a state of widowhood with small children around her, a reputation for chastity is of very great importance, is an inference which the ordinary observer, whether he happen to be judge or juror, will be apt to draw from social phenomena in this country. But it is an inference of fact. The legal effect of the charge here was not altered by the words objected to.

In Smith v. Association, 14 U. S. App. 173, 5 C. C. A. 91, and 55 Fed. 240, which was a case very like the present, the trial judge, referring substantially to the same matter as that spoken of by the trial judge in this case, said in his charge: "It is impossible to arrive by any arithmetical calculation at the amount of damages to which she is entitled on this account." Responding to the error assigned on this pronouncement, the court of appeals said: "This was a truthful statement, and the jury being further instructed that they were to compensate for the actual injury caused, that, while the amount was in their control, the amount should be reasonable and should be just, the defendant's exception is clearly unsound." It is not claimed in the case at bar that the jury were not correctly instructed as to the measure of damages. The error upon the statement above quoted from the charge is therefore not well assigned.

To one A. C. Barnett, a witness called by defendant in error, was put by her counsel the following question: "You may state, Mr. Barnett, after reading the article [meaning the publication in question], to whom did you understand it referred when it spoke of Mr. Johns-

ton's intimacy with the wife of a deceased brother?" The witness answered: "I understood it to mean Mr. Johnston and the widow that had come from Australia, that he had sent for." Counsel for plaintiff in error objected to the question, saying: "That, while the facts and circumstances might be proven, it was for the jury to determine who was meant." In this court the point is argued by both sides as though the witness had answered that, upon first reading the publication, he understood defendant in error to be the person referred to by the words "the wife of a deceased brother." Mr. Barnett was himself an hotel keeper in Logansport. He knew Johnston, and had been acquainted with defendant in error during all the time of her residence in Logansport.

In Odgers on Libel and Slander (page 567), it is said: "The plaintiff may also call at the trial his friends or others acquainted with the circumstances, to state that, on reading the libel, they at once concluded that it was aimed at the plaintiff. It is not necessary that all the world should understand the libel; it is sufficient if those who know the plaintiff can make out that he is the person meant." To the same effect is the text in Falkard's Starkie on Libel and Slander (4th Eng. Ed. p. 589).

In Eastwood v. Holmes, 1 Fost. & F. 349, Willis, J., ruled out the question: "To whom did you understand the article to apply?" But in that case the publication showed on its face that it applied to an entire class of dealers, and not to the particular person who brought the suit. Moreover, the court held the publication itself not actionable. Decisions in England and in this country seem in general to be in accord with the text as quoted from Odgers. Du Bost v. Beresford, 2 Camp. 512; Cook v. Ward, 6 Bing. 412; Broome v. Gosden, 1 C. B. 728; Bourke v. Warren, 2 Car. & P. 307; Knapp v. Fuller, 55 Vt. 311; McLaughlin v. Russel, 17 Ohio, 481; Prosser v. Callis, 117 Ind. 105, 19 N. E. 735.

One's reputation is the sum or composite of the impressions spontaneously made by him from time to time, and in one way or another, upon his neighbors and acquaintances. The effect of a libelous publication upon the understanding of such persons, involving necessarily the identity of the individual libeled, is of the essence of the wrong. The issue in a libel case concerns not only the sense of the publication, but, in a measure, its effect upon a reader acquainted with the person referred to. The accuracy of the witness as to identity may be tested by cross-examination. At all events, and in view of the answer by Mr. Barnett, which appears to be the only matter in the record suggesting the possibility that there might have been some "wife of a deceased brother" other than this defendant in error to whom the publication in fact referred, this court cannot hold the error in question well assigned.

One Gravis, a witness called by plaintiff in error, testified that two daily newspapers, The Pharos and The Daily Journal, were published in Logansport. Error is assigned upon the refusal of the court to permit an answer to the following question put to this witness: "You may tell the jury whether publications of the purport of the one

you have there [being the article published in the Cincinnati Enquirer] were published in those papers?" This inquiry covered publications which might be subsequent to or copied from that sued on. It was not error to exclude an answer.

In the course of the charge, the court said:

"There is no privilege in journalism which will excuse a newspaper in publishing false and defamatory charges when any other like publication by another person would not be excused. Whatever functions the journalist performs are assumed for his own advantage, and are laid down at his will, and are performed under the same responsibility attaching to all other persons. A journalist is not above the law. The greater extent of circulation makes his libels more damaging, and imposes special duties, as to care to prevent the risk of such mischief, proportionate to the peril."

The last sentence, which is the matter assigned as error, is a truism; namely, that whoever, for personal profit, voluntarily makes use of an instrumentality which may be exceptionally hurtful to another, must, for that reason, be the more careful. The word "satisfaction," near the close of the charge, as before quoted in this opinion, obviously means "equivalent" or "compensation."

The judgment is affirmed.