# WASHINGTON TIMES COMPANY *v.* DOWNEY.

LIBEL; DAMAGES; EVIDENCE; MENTAL SUFFERING; CHARGE TO JURY.

1. Mental suffering shown to be the natural and direct result of defamatory words spoken, or published in writing, or printed, constitutes an element of recoverable damages.

2. A newspaper publication is actionable *per se* where it contains charges tending to bring another into contempt, ridicule, or disgrace, whether it amounts to a charge of a criminal offense or not (following *Washington Gaslight Co.* v. *Lansden*, 9 App. D. C. 508) ; and where it does not appear that such statements or charges are true, or have been justifiably made, malice must be presumed (following *Bailey* v. *Holland*, 7 App. D. C. 184).

3. Where published words are libelous *per se*, the person libeled is entitled to recover general damages for injury to his feelings and the mental suffering endured as a natural result of the publication. (Following *Norfolk & W. S. B. Co.* v. *Davis*, 12 App. D. C. 306.)

4. A charge to the jury in a libel case, which permitted the jury, in assessing the damages sustained by the plaintiff, to include such as she may have sustained in her occupation and calling as a laundress, was not erroneous, although the evidence did not show that the plaintiff lost her employment, or had been deprived of her wages to any specified amount, where she testified that she was not able to work as before, and that she had to obtain help in her work on account of her weakened condition.

5. In an action for libel, testimony of the plaintiff to the effect that she had no parents living is admissible in order that the jury may be put into a situation to consider whether the plaintiff's mental suffering might not have been more poignant as well as certain in view of her being a single woman without parents to sustain and comfort her when charged with disgraceful conduct.

6. Testimony in a libel suit that the plaintiff was dependent upon her own exertions is admissible, when offered not for the purpose of showing poverty in order to ask for increased damages, but as relevant to

the charge that impaired capacity to labor was an item of the actual damages resulting from the injury, and also as tending to show that reasonable apprehension of loss of employment might have contributed in some degree to the mental suffering.

7. *Quære,* Whether in a libel suit the poverty as well as the social condition of the plaintiff may be proved, on the ground that the injurious consequences of the libel may readily be greater in some conditions than in others.

8. A party to a suit who fears that certain evidence of his adversary, admitted for a specific purpose only, may be considered by the jury for another purpose, ought to ask a special instruction to that effect.

No. 1547.   Submitted October 12, 1905.   Decided November 8, 1905.

HEARING on an appeal by the defendant from a judgment upon a verdict of a jury in an action of libel.   *Affirmed.*

The COURT in the opinion stated the case as follows:

The appellee, Johanna Downey, as plaintiff below, began this action against the Washington Times Company to recover damages incurred through a libelous publication in the Evening Times, a newspaper printed and circulated by that company in the city of Washington on October 7, 1902.

The declaration sets out the defamatory and libelous article so published, which is entitled "Prayers Asked for Johanna's Removal.   Queer Petition to Trinity Congregation over Turmoil in a Laundry."   Without reciting the article, which is lengthy, it is sufficient to say that it charges the said Johanna Downey with causing daily troubles for the past seventeen years in the Georgetown College laundry.   Among other things, it charges that on one occasion she had been seen swinging out of a window in her night robe in a contest with another employee; that on another occasion, a few months before the publication, she had "cursed the boss like a sailor (meaning thereby that she had used abusive, profane, foul, and blasphemous language"); that she had thrown a cup of hot tea in the face of another employee. It also charged that she had been a favorite of the "boss," and has thereby been relieved of labor, and awarded better fare than

others, etc. It is then added: "These are only a few items out of the daily occurrences for seventeen years." A note appended to the article asks that it be published by all fair-minded newspapers throughout the country, that people may understand that the employees, after seventeen years of turmoil, are justified in requesting the prayers of the congregation of Trinity Church for the removal of the plaintiff from said laundry. It is averred that by reason of said publication, so wickedly and maliciously made, the plaintiff has been greatly injured in her good name, fame, and credit, and brought into public scandal, ridicule, and disgrace amongst her neighbors and other good citizens, who have been led to suspect and believe that she has been guilty of the conduct falsely imputed to her, and have refused to have acquaintance and social intercourse with her, and that "the plaintiff, by means of the committing of the said several grievances by the defendant, its servants, agents, and employees as aforesaid, became dejected in mind and enfeebled in body, so as to be prevented from attending to her ordinary business, and is, by means of the premises, otherwise greatly injured and damnified" in the sum of $10,000.

To this declaration the defendant pleaded the general issue.

On the trial the plaintiff was asked to state what effect the publication had produced upon her physically and mentally. Defendant objected, on the grounds that no damages could be recovered for effect on physical and mental conditions through publication of the libel, and that there was no allegation claiming damages of that character. The objection was overruled and exception reserved.

Plaintiff then testified that "she was not able to work as before; that she lost her memory; that that morning she could not remember a thing; that her health left her and she did not know what to do, only to lie down and cry; that Dr. Gwynne attended her once for shock, although she had never had a physician before; that she had to get somebody to help her with her work on account of her physical condition, and that she has had to take medicine every day before meals for nervousness, and did not take it before the publication." On cross-examination she said

that she had been absent "about two weeks, during which time she was attending her aunt, who was sick; that nobody talked to her about the article; that her friends did not believe it; that nobody refused to have any acquaintance or discourse with her on account of the article, and nobody that knew her believed it." She was then permitted to testify that her parents were dead, and that she was dependent upon her own efforts. This was objected to as immaterial, but the objection was overruled, with exception reserved.

Dr. Gwynne testified that he was called to see plaintiff immediately after the publication of the article and "found her very nervous and excitable, suffering from shock, and appeared to be weak and trembling;" that her nerves had affected her physical condition, but she did not have nervous prostration. He only prescribed for her once, and at the time gave her bromide to quiet her nervous system, this being the usual remedy.

Other testimony tended to show good health of plaintiff before the publication, and a bad condition of health immediately thereafter, and that medicine had been taken to quiet her nerves, etc.

The only evidence offered by the defendant tended to show that the article had been left in defendant's office by a "New York Sun man," after it had been refused by its manager, and that the publication was a mistake. At plaintiff's request the court gave the following instruction to the jury:

"The jury are instructed that in estimating the damages to be awarded the plaintiff they should render the verdict for such sum as they believe from the evidence will fully and fairly compensate the plaintiff for the injuries suffered by her by reason of the publication by the defendant company of the libel complained of; including injuries, if any, done thereby to the plaintiff in her occupation and calling as a laundress, and her mental suffering and physical injuries incident thereto arising out of the statements and accusations contained in the said publication, and the tendency thereof to bring the plaintiff into disgrace and disrepute among those of her calling and her friends and acquaintances and the community in general."

Defendant objected to this instruction on the following grounds:

1. That no recovery could be had in actions for libel on account of physical injuries and mental suffering. 2. That there was no claim for such injuries in the declaration. 3. That there was no evidence on which to base damages for injury done to the plaintiff in her occupation and calling as a laundress.

The jury returned a verdict for the plaintiff for $1,000 damages, and judgment was entered thereon, from which this appeal has been prosecuted.

*Mr. Wilton J. Lambert* and *Mr. D. W. Baker* for the appellant.

*Mr. Hayden Johnson, Mr. J. McDowell Carrington,* and *Mr. Campbell Carrington* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The first assignment of error is founded on the exceptions taken to the admission of evidence tending to show mental suffering resulting from the publication complained of, as well as to the charge submitting the same as an element of damage to be considered by the jury.

1. The general proposition that mental suffering shown to be the natural and direct result of defamatory words spoken or published in writing or print constitutes an element of recoverable damages seems to be supported by the great weight of authority. *Markham* v. *Russell,* 12 Allen, 573, 90 Am. Dec. 169; *Marble* v. *Chapin,* 132 Mass. 225, 226; *Rea* v. *Harrington,* 58 Vt. 181, 56 Am. Rep. 561, 2 Atl. 475; *McQueen* v. *Fulgham,* 27 Tex. 463, 469; *Turner* v. *Hearst,* 115 Cal. 394, 399, 47 Pac. 129; 18 Am. & Eng. Enc. Law, p. 1083, and cases cited.

The leading case relied on by the appellant as maintaining the opposite view is that of *Terwilliger* v. *Wands,* 17 N. Y. 54,

59, 72 Am. Dec. 420. That was an action for slanderous words spoken of a man, and it was held that he could not recover for injury to his health, and the mental anguish resulting therefrom. The spoken words, while tending to disgrace the plaintiff, did not charge him with the commission of any crime. We need not pause to discuss the distinction in this respect, which has generally been observed, between oral and written or printed words of defamation, or to consider whether some of the cases first cited may not be distinguished from *Terwilliger* v. *Wands* on that ground, because the point is unnecessary to the determination of the case at bar.

In the former case in this court, Mr. Chief Justice Alvey, who delivered the opinion, said: "Any and all publications, in writing or in print, imputing to another crime, or disgraceful, or fraudulent, or dishonest conduct, or which are injurious to the private character or credit of another, or which tend to render a party ridiculous or contemptible in the relations of private life, are libelous, and an action for damages is maintainable against the writer and publisher, unless the publication is embraced within that class of communications which are termed privileged communications, or unless the libeler can prove the truth of the libel." *Washington Gaslight Co.* v. *Lansden,* 9 App. D. C. 508, 530. See also *Bailey* v. *Holland,* 7 App. D. C. 184, 189, and cases there cited.

In the last-named case, it was said: "Where it does not appear that such statements or charges are true, or have been justifiably made, malice is presumed from their utterance. The malice consists in doing intentionally and without justification that which must work injury to another."

Whether any of the statements in the publication complained of amount to a charge of a commission of a criminal offense, though a trivial one, is immaterial, for, without doubt, they do contain charges tending to bring the plaintiff into contempt, ridicule, and disgrace. Consequently the publication is actionable *per se.* The plaintiff is, therefore, entitled to recover as general damages for injury to her feelings and the mental suffering which she endured as a natural result of the publication.

*Norfolk & W. S. B. Co.* v. *Davis,* 12 App. D. C. 306, 333. The charge in that case was substantially the same as that under consideration. See also *Brooks* v. *Harison,* 91 N. Y. 83, 92, which limits the doctrine of the earlier case of *Terwilliger* v. *Wands.*

2. Another and distinct ground of exception to the charge is that it permitted the jury, in estimating the damages sustained by the plaintiff, to include such as she may have sustained "in her occupation and calling as a laundress."

It is true that the evidence did not show that the plaintiff had lost her employment, or that she had been deprived of her wages to any specified amount, but she did testify that she was not able to work as before, and that she had to obtain help in her work on account of her weakened condition. It was for the jury to say what weight should be given to this evidence in arriving at a fair and just estimate of the entire damage sustained.

3. The remaining assignment of error relates to the admission of the testimony of the plaintiff to the effect that she had no parents living and was dependent on her own exertions.

(1) Had this been an ordinary action for damages for injuries to person or property, the admission of the evidence over the defendant's objection would constitute reversible error. Such actions must be tried and verdicts found upon the facts constituting the cause of the action, uninfluenced by the social or pecuniary conditions of the respective parties. The peculiar character of actions for libel and slander, and the latitude of recovery permitted therein, have generally, however, been regarded as furnishing grounds for excepting them, to a certain extent, from the operation of this rule. The great weight of authority sustains the admissibility of such evidence, as regards the defendant, on the ground that the injurious effect of the defamatory words may reasonably depend largely upon the influence which the defendant may have in the community by reason of wealth and social position. Some authorities hold that evidence relating to the social, and especially the pecuniary, condition of the plaintiff, is inadmissible upon any ground, and these are strongly relied on by the appellant. *Pool* v. *Devers,*

30 Ala. 675; *Reeves* v. *Winn,* 97 N. C. 246, 2 Am. St. Rep. 287, 1 S. E. 448.

On the other hand, a greater number hold that it is admissible to show the circumstances of the plaintiff, including not only her pecuniary condition, her family, and the like, but all the circumstances which give character to the slander and the injury occasioned thereby. *Clements* v. *Maloney,* 55 Mo. 352; *Peltier* v. *Mict,* 50 Ill. 511; *Dixon* v. *Allen,* 69 Cal. 528, 11 Pac. 179; *Turner* v. *Hearst, supra; Larned* v. *Buffington,* 3 Mass. 546, 3 Am. Dec. 185; *Klumph* v. *Dunn,* 66 Pa. 141, 147, 5 Am. Rep. 355; *Barnes* v. *Campbell,* 60 N. H. 27; *Enos* v. *Enos,* 135 N. Y. 609, 612, 32 N. E. 123; *Press Pub. Co.* v. *McDonald,* 26 L. R. A. 531, 11 C. C. A. 155, 26 U. S. App. 167, 63 Fed. 238, 243; *Beehler* v. *Steever,* 2 Whart. 313; *Enquirer Co.* v. *Johnston,* 18 C. C. A. 628, 34 U. S. App. 607, 72 Fed. 443, 444. In several of the cases last cited, the plaintiff, to whom want of chastity had been imputed, was permitted to prove that she had young children. Discussing the admissibility of evidence of that fact, it was said by Showalter, Ch. J., in delivering the opinion of the circuit court of appeals: "The children were part of her environment. Her relation to them was such as might make the hurt to herself more acute and permanent, such as might render her more sensitive to, and more helpless against, the wrong done. This court cannot hold that the fact objected to was improperly brought to light,—especially in view of the particular character of the publication."

The foregoing reasoning is equally applicable to the facts of this case. Mental suffering being a recognized element of the damages recoverable, it was not error to let the jury be put in a situation to consider whether that mental suffering might not be more poignant as well as certain in the case of a single woman without parents to sustain and comfort her when charged with the disgraceful conduct.

(2) It appears from the recitals of the bill of exceptions that the fact of plaintiff's dependence upon her own exertions was not offered for the purpose of showing poverty, in order to ask increased damages on that account, but as relevant to the charge

that impaired capacity to labor was an item of the actual damages resulting from the injury. Moreover, the reasonable apprehension of loss of employment might have contributed in some degree to the mental suffering. Now the unquestioned fact, recited in the libelous article itself, that the plaintiff had been employed in a laundry for seventeen years, was sufficient to show that she must have been dependent upon her own labor, without any direct evidence to that effect.

In connection with plaintiff's disclaimer of a purpose to prove poverty as an independent fact for the consideration of the jury, it is to be observed that no evidence was offered to show that she had no property, or had accumulated no savings. Some of the cases heretofore cited go to the length of holding that the poverty, as well as the social condition, of the plaintiff, may be proved, on the ground that the injurious consequences of the libel may readily be greater under some conditions than others. But, as we have seen, the admissibility of proof of poverty as an independent fact is not necessarily involved in this case. If it were we would not give it our approval.

There is nothing in the amount of the verdict to indicate that the jury were influenced by the poverty of the plaintiff to go beyond the limit of fair and reasonable damages enjoined by the court. If, after the express limitation of the purpose of the evidence, the defendant had any reason to apprehend that the jury might consider it for another, it ought to have asked a special instruction to that end; and this would, no doubt, have been granted.

For the reasons given, the judgment will be affirmed, with costs. It is so ordered.                        *Affirmed.*