FLORENCE HARRIMAN v. NEW NONPAREIL COMPANY, Appellant.

Libel: PRIVILEGED PUBLICATION. An alleged libelous publication relating to a private person concerning whom there is no occasion to speak cannot be privileged.

Instructions: CONFUSION OF ISSUES. Where the defendant in a libel suit relied upon the truth of the publication as a distinct offense and also claimed that it was privileged, an instruction so blending the defenses that the court's statement that the publication was not privileged conveyed the inference that it was not true, is held misleading and erroneous.

Libel per se: HOW DETERMINED. Where there is no evidence tending to support the alleged meaning to be given a publication different from that which its language naturally imports the question of whether it is libelous *per se* is for the court.

Libel per se. The published statements concerning a woman that she has come into considerable notoriety in connection with a sensational police court case in which a young man was involved; and, that she has a record well known to the police, are libelous *per se.*

Same: INSTRUCTIONS. In submitting the defense of the truth of an alleged libelous publication where there is no evidence as to the meaning of the words published, the court should not leave the jury to construe the meaning of the language, but should tell them what the words must be understood to mean and direct them to find the truth of the publication as so construed.

Same: EVIDENCE. In an action for publishing an alleged libelous statement that plaintiff had a record known to the police court at the time of her marriage, evidence of her record prior to the marriage was competent, but that relating to a subsequent date though previous to the publication was incompetent.

Evidence: DAMAGE. The plaintiff's statements in an action for libel as to the amount of damages is a conclusion and inadmissible.

*Appeal from Council Bluffs Superior Court.*— HON. GEORGE H. SCOTT, Judge.

SATURDAY, DECEMBER 15, 1906.

ACTION to recover damages for libel.  Verdict and judgment for plaintiff.  Defendant appeals.— *Reversed.*

*Mayne & Hazelton,* for appellant.

*A. B. Wadsworth,* for appellee.

McCLAIN, C. J.— As the claims of the respective parties are very fully set out in the instructions, it will be sufficient to consider the instructions themselves in determining whether the issues were properly presented to the jury. It appears that two articles were published by the defendant in regard to one Harriman, by way of news comment on the fact of his marriage to this plaintiff. In one of them the matter complained of consists of the statements that plaintiff " has had almost as eventful a life for a young woman as has her husband for a young man," and that " before the Ferris affair (*i. e.,* the marriage of plaintiff to one Ferris, from whom she was divorced before her marriage to Harriman), she had also come into considerable notoriety by her connection with a sensational police court case, in which a well-known Council Bluffs young man was involved; " and in the second the statement that " a short time afterwards he (Harriman) married Florence Le Baugh, a young woman with a record well known to the police." It is conceded that these statements were made with reference to this plaintiff, and the allegations on her behalf are that the natural result of the publication was to defame and injure her reputation and social standing, and bring upon her the scorn and ridicule of her former associates and friends; that the reading of said statements in said paper caused people to think plaintiff was of bad character, and caused her former associates to shun and avoid her, and caused great damage to her reputation and social standing; and that the statements

so published involved the moral turpitude of plaintiff and
defamed her good name, and ostracized her from the society
of reputable people, and that they created in the minds of
those who read them the impression and belief that plaintiff
was a common prostitute and bad character, and that she
had frequently been arrested by the police, and thereby
caused great damage to the fair name and social standing
of plaintiff. These allegations as to the meaning of the
different statements and their effect are specifically appor-
tioned among them, but it is not necessary now to point out
which particular interpretations and effects were applied to
each particular statement. There was also the general al-
legation that people understood, from the false statements
concerning plaintiff, that she was a bad, licentious, immoral,
common girl of the streets, giving the police authorities much
annoyance, and being frequently arrested and incarcerated,
and it was further alleged that such statements were libel-
ous *per se,* and published with malicious intent and purpose.
Defendant took issue as the meaning and intent of the lan-
guage used, and pleaded that, as properly and reasonably
interpreted, they were true and correct, and also that they
were not actionable *per se.* Defendant also pleaded that the
publications were privileged.

After thus setting out at considerable length the claims
of the respective parties, substantially following the allega-
tions of the petition and answer, the court more specifically
stated the issues, and with reference to the answer of de-
fendant said that the defendant claimed the articles com-
plained of were not susceptible of the construction and
interpretation set forth by the plaintiff, " and that the
statements therein contained, when taken in their plain
and natural import, are true," and averred " that the same
constitute facts and as such are privileged." Following this
was an instruction stating that the court failed to find, from
the law in the case or from any evidence introduced, any
reason or ground to support the contention of defendant that

the articles complained of were privileged.   The court did
not fairly present the allegations of defendant's answer in
saying that it relied on the truth of the statements as showing
privilege.   The defendant relied upon the truth as a com-
plete defense or justification, and pleaded privilege as an
independent fact.

There was, however, no basis for the claim that the pub-
lication was privileged, inasmuch as it related to a private
person, with reference to whom there was no occasion to
1. LIBEL:            make any publication whatever.   *Negley v.*
privileged
publication.      *Farrow,* 60 Md. 158, 177 (45 Am. Rep. 715) ;
*Trebby v. Transcript Pub. Co.,* 74 Minn. 84, 89 (76 N. W.
961, 73 Am. St. Rep. 330).

As there was practically no question of privilege in the
case, the confusion in the instructions, between the allega-
tion that the publication was true and the allegation that
2. INSTRUCTIONS:   it was privileged, may not have been in itself
confusion of
issues.            prejudicial to the defendant; but in the lan-
guage last above quoted the court declared that the publica-
tion was not privileged, and by reason of the confusion in
the preceding instruction the jury may have understood
therefrom that it was not true.   By this confusion we think
the defendant was deprived of the full benefit which it
should have had of the allegation of the truth of the matters
published.

The principal difficulty with the instructions, however,
is that, as already suggested, the court so stated the issues
as to indicate that the question whether the language used
3. LIBEL PER SE:   was libelous *per se* was for the jury, and
how deter-
mined.            in continuance of this error the court said in
a subsequent instruction:

It is for you to determine the construction to be placed
upon said articles in their plain and natural import — that
is, what the reading public would fairly and without preju-
dice place upon the same — and for you to place thereon
such interpretation and construction as fair-minded men

would give to the same, and fairly and rationally construe them, and when you have thus interpreted and construed the same, if you find that no such construction as claimed by the plaintiff, in whole or in any material part, can be placed upon the said articles, or either of them, then the plaintiff cannot recover, and your verdict should be for the defendant. But if, when you have so construed the articles in question, you find that the said articles in substance, either in whole or in any material part, bear the construction claimed by plaintiff, and that they would be so construed and interpreted and generally understood, when fairly and impartially considered by fair-minded men and the general public, then the article or articles referred to and so construed would be libelous *per se* — that is, without legal excuse; in other words, presumed to be false — and the burden would be upon the defendant to show that the same were published without malice or malicious intent, and the defendant would then assume the burden of this presumption. If the defendant relies upon the truth of the articles in question, and you shall find in your interpretation referred to above that the allegations of plaintiff as to the construction placed upon said articles, either in whole or in any material part, are correct, then the defendant by a preponderance of the evidence must either show that the said articles are true in every material part as interpreted by you; otherwise, it fails in its defense as to the truth of its allegations.

While there were allegations in the pleadings as to the meaning which should be attached to the language used, there was no evidence whatever of any facts or circumstances giving to the language any other meaning than that imported on its face, and therefore the simple question for determination was whether the words, taken in their usual and ordinary meaning, were libelous *per se.* This was a question for the court, and should not have been submitted to the jury. *Sheibley v. Ashton,* 130 Iowa, 195; *Trebby v. Transcript Pub. Co.,* 74 Minn. 84 (76 N. W. 961, 73 Am. St. Rep. 330); *Brewer v. Chase,* 121 Mich. 526 (80 N. W. 575, 46 L. R. A. 397, 80 Am. St. Rep. 527); *Harrison*

*v. Findley,* 23 Ind. 265 (85 Am. Dec. 456); *Moore v. Francis,* 121 N. Y. 199 (23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810). Appellee's counsel refer to our recent cases of *Morse v. Times-Republican Printing Co.,* 124 Iowa, 707, and *Jenson v. Damm,* 127 Iowa, 555, as sanctioning the submission of the question as to the meaning of the language used to the jury; but in the first of these cases there was evidence as to facts and circumstances which could be taken into account in determining the meaning of the language, and in the second there was no question raised or discussed as to the propriety of such a reference to the jury. Certainly, if the language is to be interpreted according to its fair and ordinary meaning, without regard to any facts or circumstances, the court is the proper tribunal to determine the meaning conveyed by the language.

The first of the three statements relied on by the plaintiff as being defamatory was clearly not libelous *per se.* It cannot be that any fault, impropriety, or bad reputation is charged by saying, even of a young woman, that she has had an eventful life. Such a statement did not tend to defame her nor injure her reputation or social standing. The statement that she had come into considerable notoriety by her connection with a sensational police court case in which a young man was involved was no doubt libelous, and the court would have been justified in so directing the jury. The statement that she had a record well known to the police was also libelous *per se.* It is to be noticed that the statement is not that the plaintiff herself was well known to the police. Such a statement might have been consistent with entire innocence and propriety of conduct. A young woman might become known to the police by having been assaulted on the street, or by having her rooms entered by a burglar, and no impropriety of conduct would in either case be necessarily involved. But to say that she had a record well known to the police would tend to indicate, as we think, that plaintiff had been

4. LIBEL PER SE.

brought to the notice of the police by being under surveillance, on account of her conduct or reputation, or by reason of having been arrested. As the jury found for the plaintiff, it was not, perhaps, prejudicial to the defendant that the last two statements were submitted to the jury for determination as to their libelous character.

But in the latter part of the instruction the jury was told that, to establish the defense that the statements were true, defendant must by a preponderance of the evidence show that they were true in every material part as interpreted by the jury; otherwise, it would fail in such defense. This deprived the defendant of the full benefit of its allegations as to the truth of the matters stated, for the plaintiff had alleged that these statements imputed to her bad, licentious, and immoral conduct; and, if the jury found in accordance with this allegation, then defendant's plea that the statements were true could only be made out by showing the plaintiff to have been a woman of that character, whereas she might have had a record well known to the police without being an immoral or licentious woman, as those words are usually used in such a connection. In short, the court should have told the jury what the statements must be understood to have meant, and then left it to the jury to say whether in this meaning they were true, and should not have left the jury to speculate as to the meaning of the language and then determine, in view of such speculation, whether the truth of the statements was made out. There was, therefore, manifest prejudicial error in the submission to the jury of the question as to the meaning of the statements made.

5. SAME: instructions.

There are other complaints as to the instructions given, and, as we think, they have some foundation; but, if the fundamental rules as to the particular issues to be submitted are observed on a retrial of the case, the other errors will not be likely to occur, and it is not necessary here to further elaborate the objections made to the instructions.

Policemen, who had been in the service of the city two or three years prior to the time of publication of the alleged libel, testified for the defendant as to the police record of the plaintiff while they were such officers. In rebuttal, plaintiff introduced the testimony of witnesses who had been policemen for two or three months prior to the publication, in order to show at that time plaintiff had no record known to the police. Counsel for appellant complain that the testimony of these witnesses called for the plaintiff did not rebut evidence of the witnesses called for the defendant, inasmuch as plaintiff's witnesses had no knowledge with reference to the matter testified to by the witnesses for defendant. The publication, in which reference was made to plaintiff's police record, was in June; but it referred to the plaintiff as of the time of her marriage to Harriman, which is stated to have been in March. The question at issue was, therefore, as to whether plaintiff had a police record in March. So far as we can understand the testimony of the witnesses offered for plaintiff in rebuttal, they had no knowledge as to that fact, and their testimony was incompetent. The testimony of the witnesses for defendant was competent; for, while they testified to a condition two or three years prior to the publication, that condition was plainly included in the published statements. If plaintiff had a police record two or three years prior to her marriage to Harriman, then she had such a record at the time of such marriage.

6. SAME: evidence.

Over defendant's objections, counsel for plaintiff was allowed the ask her as a witness in what amount she had been damaged by reason of the publication of the articles, and she finally answered that she thought her damage was $12,000, although she did not know whether this included exemplary or punitive damage, and referred to her counsel with reference to that. This was plainly error. The question called for nothing but plaintiff's own conclusion as to the amount of damage, and the objection to it should have

7. EVIDENCE: damage.

624    ELECTRIC LIGHT CO. v. McCRARY.    [132 Iowa

been sustained. *Blair v. Milwaukee, etc., R. Co.,* 20 Wis. 254.

For the reasons pointed out, the judgment of the trial court is *reversed.*