JOSEPH J. OTT, Appellee, v. R. LOUIS MURPHY, PATRICK J. QUIGLEY and TELEGRAPH-HERALD, Appellants.

**Libel:** PRIVILEGE. Writers and actors are subject to fair criticism; and 1  so long as such comment is published with good motives and without malice it is privileged. Such comment, however, cannot be made an excuse for an attack on private character.

**Same:** CANDIDATES FOR OFFICE. The fitness of candidates for office, and 2  the conduct of public officials, are proper subjects for discussion; but the conduct of an unsuccessful candidate for office in one campaign is not a proper subject of comment in the future, especially where he had abandoned the idea of becoming a candidate again.

**Same.** Criticism of a candidate for public office is only privileged when 3  founded upon truth, and relates to the public capacity of the person criticised and not to the person himself.

**Same:** NEWSPAPERS. The rules limiting discussion of candidates for 4  public office apply to newspapers and their publishers.

**Same:** SECOND PUBLICATION: MALICE. The second publication of a 5  newspaper article concerning a candidate for office, which was libelous *per se,* in connection with another article on the subject con-

stituted a distinct cause of action, and was proper to be considered on the question of malice in publishing it originally.

Same: PRIVILEGE: INSTRUCTION. In order to render criticism of a person's fitness for a public office privileged it must appear that he was holding himself out as a candidate and seeking the office, although actual nomination for the office is not necessary.

Same: BURDEN OF PROOF. One seeking to justify the publication of a libelous article, concerning a candidate for public office, has the burden of proving his candidacy. And where a publication is privileged the burden of showing malice is upon the complaining party.

Same: MALICE. The term malice when applied to libel does not necessarily mean hatred and ill-will toward the party concerning whom the article is published, but includes the want of legal excuse for its publication; and in determining the question of malice all the facts and circumstances, as well as the articles published, may be considered.

Jurors: CHALLENGE. Where a juror has expressed an opinion on the merits of the case he is subject to challenge for cause.

Libel: EVIDENCE. In an action for libel, in which it was claimed by defendants that the publication concerning the plaintiff's fitness for a public office was privileged, plaintiff's evidence that he was not a candidate for office, and his statements to others to that effect, made before the publication of the article, were admissible as verbal acts for the purpose of showing his state of mind at the time.

Same: EVIDENCE: MENTAL PAIN. Mental suffering need not be alleged as special damage in an action for libel; and under a plea of mental suffering it is competent for plaintiff to show the effect of the libel upon the members of his family, in support of his own mental pain.

Same: MITIGATION: EVIDENCE. The publisher of a libel as of his own knowledge and not upon the authority of others, cannot ordinarily show reports or rumors of the truth of the charge in mitigation of damages.

Same: LIABILITY FOR LIBEL. Where it appeared that the proprietor and manager of a newspaper was generally consulted by the editor regarding the editorial matter, and may have thus seen the alleged libelous article before its publication, he was jointly liable with the editor for the libelous character of the article.

*Appeal from Dubuque District Court.*—HON. ROBERT
BONSON, Judge.

TUESDAY, MAY 13, 1913.

ACTION to recover damages for libels published of and
concerning the plaintiff. Defendants pleaded justification;
that the publications were privileged; that they were pub-
lished in good faith and for justifiable ends. On the issues
joined the case was tried to a jury, resulting in a verdict and
judgment for plaintiff, and defendants appeal.—*Affirmed.*

*Kenline & Roedell,* for appellants.

*Hurd, Lenehan & Kiesel,* for appellee.

DEEMER, J. The defendant, Telegraph-Herald, is a cor-
poration, publishing a daily newspaper of that name in the
city of Dubuque. This newspaper circulates, not only in
Iowa, but in the adjoining states of Illinois and Wisconsin.
Defendants Murphy and Quigley are, respectively, the editor
and publisher of said newspaper, and it is charged that
Murphy by and with the consent, approval, and command of
his codefendant, Quigley, published of and concerning the
plaintiff in the Telegraph-Herald the following false, libelous,
and scandalous matter:

The Telegraph-Herald hears that Mr. Joseph J. Ott is
ambitious to secure the citizen's nomination for mayor.

Mr. Ott professed to be a Democrat until two years ago,
when he became a candidate for mayor on a ticket opposed to
the Democratic ticket.

His change of coat indicated that he had neither depth of
political convictions, nor depth of character.

Mr. Ott was beaten for mayor two years ago. It is well
that he was beaten. The city has had two years of very good
government. The tax levy this year is a half mill less than
it was last year.

Mr. Ott is an extravagant manager and if he had been mayor, we have no doubt that there would have been a large increase in the tax levy.

Mr. Ott made the race interesting last year by the use of money which his friends and certain interests which hate Mayor Schunk, contributed for him. Beer flowed like water and the campaign ended in a debauch,—a shameless prostitution of decency.

Ott and his supporters spent upwards of $10,000. Big tax dodgers, certain employers who resented the 'effrontery' of Mayor Schunk in suggesting arbitration of a strike, the discredited waterworks trustees, a large and affable citizen who, advised of the illegality of a certain course, replied, 'to hell with the law,'—these and others were the grand army of civic idealist back of the Ott candidacy. These and John Steiner, former Sheriff, and one Lange, whose volubility estops corruption of his name into one Lung. Among them all they had money enough to turn the spigot wide open, knock out the bung, and 'let 'er flow.'

Mr. Ott may suit himself about running. The same interests which backed him before may suit themselves about putting their money on a dead horse. But we hope that should he be granted another chance at the mayoralty that he will give his ideals an antiseptic bath and avoid the indecent spectacle of making the electorate drunk.

. . . to charge plaintiff with lack of reputable character, that he was unsafe, unreliable, and dangerous as a business manager, that plaintiff had used money in procuring and producing a public drunken debauch, and that his conduct in the community where he lives was a shameless prostitution of decency, and that defendants further intended by the article so maliciously written, composed, published, and circulated by them concerning the plaintiff, to charge that he had undertaken to and did corrupt and debauch the voters of the city of Dubuque by the unlawful, free and unlimited use of money and beer in a certain election therein referred to and held two years before the publication of said libelous article. And plaintiff further avers that by its contemptuous language and coarse and insulting insinuations defendants intended to, and by the use of the words and expressions contained in said article did, hold the plaintiff up to the scorn of its readers, and intended thereby to belittle, ridicule, and expose him to public hatred, bring him into disgrace amongst his neighbors and

the people of the community where he lives, and to provoke him to wrath, and by the publication of the false and defamatory words aforesaid, and of the article herein set forth, to insinuate, suggest and charge that he was a man of low, coarse, unclean moral standards, ideas, and methods, and was unworthy the confidence, respect, and association of his neighbors, business associates, and the public generally.

This publication was made on the 3d day of March, 1910, and it seems that on the 18th day of the same month plaintiff commenced his action of libel, based thereon. Thereupon, and on the same day, defendants published of and concerning the plaintiff, in said newspaper, the following: "The Telegraph-Herald considers that (Mr. Ott) has revealed a modesty which none suspected him to harbor in asking a mere $20,000 as balm for his wounded vanity. Over in Paris, they are producing a play called Chanticleer. The principal character is a rooster who considers that the sun rises in response to his crowing and that if he should fail to crow the sun would not rise. Doubtless if some dunghill rooster with a far reaching voice should imply that the sun would rise even if Chanticleer should not crow, Chanticleer would consider that his reputation had been damaged $20,000 worth." The publication of the last article is made the basis of a second count to the plaintiff's petition, which was filed April 8, 1910, and it is said that the second publication was made "maliciously and deliberately intending to give further and wider publicity to the malicious libel published and circulated by them, and to further ridicule the said plaintiff, and to expose him to the contempt, ridicule and hatred of the readers of said newspaper and the people of the community in which he lives, and to provoke him to wrath."

It is also charged that the original libel was republished on March 18th with the same intent as the former publication. Defendants admit the publications, but justify the first on the theory that it was privileged for the reason that plaintiff was then a candidate for office, that they believed all the

charges to be true, and published the same in good faith, and for the purpose of advising the electorate of the real character and qualifications of plaintiff for the office which he was then seeking. They admit the republication of the same article on the 18th of March, and of the matter charged in the second count of the petition, and aver that they "were fully informed regarding all the facts and circumstances covered by said editorial, and comment thereon, and believed that the words published, the statements made, and the deductions therein drawn in said editorial and comment thereon were true, and published them without malice and in good faith, after plaintiff had given notorious circulation and publication thereof, by the institution of an action at law for damages, in the district court of Dubuque county, Iowa, against these defendants, wherein said editorial was made the basis of his recovery in said action as a matter of public record in said suit." They also averred "that the publication of said article was likewise privileged in that the subject-matter thereof, the deductions therein drawn and the comments therein made were reasonable, proper and of general public interest and concern, and that the publication thereof was made in good faith and without malice towards plaintiff in furthering the interests of clean political campaigns, civic purity, and good government."

In another division of their answer, they also averred "the truth of said articles so published and as charged; that the deductions drawn and the comments made in said articles were reasonable, right, proper, and fitting to be made; and that said articles were so published without malicious and with good motives, and for justifiable ends as stated in divisions one and two of defendants' answer. And defendants expressly deny that the articles so published were either false, malicious or defamatory." They further pleaded "that at and before the time of such publication the plaintiff, as defendants then knew, was and had declared himself to be, and it was generally reported that he was, a candidate for

the office of mayor of the city of Dubuque, seeking the support of the electors of said city and the general public for his nomination for said office on what was known as the Citizens' Nonpartisan Ticket, at an election thereafter to be held on April 4, 1910, in said city; that two years prior thereto the plaintiff had been the nominee for the office of mayor of the city of Dubuque on the said Citizen's Nonpartisan Ticket, and he took an active part in the conduct and management of his political campaign for said office at said election, and the defendants were fully informed and acquainted regarding the facts, circumstances, and conditions involved in and connected with the management of said prior campaign, and were acquainted with the former political affiliations of the plaintiff, covering a great many years, and knew of his connection with, and management of, some local enterprises, and the defendants were fully informed and acquainted regarding all the facts and circumstances covered by said article, and honestly believed that the article thus published, the statements therein made, were true, reasonable, proper, and of general public interest and concern, touching his qualifications and fitness for the office sought and in furtherance of civic purity, sound morality, judicious economy, and good government, and so published them, solely for such purpose, in good faith in the discharge of their duty to the public and without malice toward the plaintiff; that, furthermore, at and before the time of such publication, plaintiff, as defendants then knew, had instituted and there were had judicial proceedings against them in the Dubuque district court based upon said article and wherein the same was set out; that, by reason of these things, such publications of said articles so complained about were privileged.''

In another division of their answer they pleaded these same facts, and, in addition, rumors and reports of their truth, in mitigation of damages, and finally they pleaded that ''there was a combination by and between the plaintiff Joseph J. Ott, Joseph H. Rhomberg, William H. Meuser,

Otto F. Lang, John Steiner, John Moloney, Charles J. Young, Star Brewing Company, and numerous others whose names defendants are now unable to state, whereby they, acting in concert, sought to further and promote the candidacy and election of the plaintiff, Joseph J. Ott, for mayor of the city of Dubuque on the Citizens' Nonpartisan Ticket, in and during the campaign of 1908, by the use of money, beer, and other liquors, and thereby, and in furtherance of such combination, brought about the conditions stated in said articles; that such purpose and methods were unlawful; that the articles so published related to and touched plaintiff if at all solely respecting such purpose and methods, and that by reason thereof the plaintiff is barred from maintaining his action, and from recovering any damages whatever herein.''

It was upon these issues that the case was tried, resulting in a verdict and judgment for plaintiff in the sum of $2,500.

Defendants' counsel have assigned fifty-four errors, and we are solemnly assured that each and every assignment is good. One claim, if prejudicial in character, would be sufficient to reverse the case, and we may as well say at the outset that we shall not consider each and every error assigned, for counsel, in their briefs, have themselves brought the number down to thirty-six, and many of these are duplicated, and more have relation to the same fundamental legal principles.

I. Counsel do not differ as to many of the propositions involved. It is contended that truth is a defense, and that the testimony shows, without any substantial conflict, that the statements contained in the articles were true. It is also contended that, as plaintiff was a candidate for office, the publications were qualifiedly privileged; that defendants believed the charges to be true, and published the same with good motives and for justifiable ends, having good reason to believe them to be true. Plaintiff says that he was not a candidate for office; that the statements were false and were not privileged; but that, if privileged, they were actuated

by malice, and were not published in good faith. Defendants further say that, although plaintiff may not have been a candidate for office, he was a public character, having theretofore been a candidate, and that some of his friends were insisting that he again become a candidate at the election, which was then imminent.

The legal proposition here involved is challenged by plaintiff's counsel, who say that the plaintiff was not a public character in such sense that defendants were justified in pub-

1. LIBEL: privi-
   lege.

lishing matters, which occurred, or were reputed to have occurred, at a prior election, especially in view of the fact that the plaintiff was not again seeking the suffrage of the people, and was no longer actively engaged in practical politics. This difference of opinion raises the principal fundamental legal proposition in the case. We may as well, although a little out of regular order, dispose of this question now. All who are asking the patronage of the public, whether they be actors or writers, lay themselves open to comment, and so long as that comment is fair, published with good motives, and without malice it is privileged. *Cherry v. Des Moines Leader,* 114 Iowa, 298; *Klos v. Zahorik,* 113 Iowa, 161. And it is doubtless true that public characters may also be criticized, but even such comment cannot as a rule be made an excuse for an attack on private character. *Clifton v. Lange,* 108 Iowa, 472; *Morse v. Printing Co.,* 124 Iowa, 707; *Cooper v. Stone,* 24 Wend. (N. Y.) 434.

Of course, the fitness of candidates for public office may be discussed as also may the conduct of public officials; but we find no authority for holding that, because a person may

2. SAME: candi-
   dates for of-
   fice.

have once been an unsuccessful candidate for public office, his conduct in that campaign is a fit subject of comment for all time in the future, although he may have abandoned the thought of becoming a candidate or again seeking the favor of the people. If he is not again a candidate for office, "the dead past

should bury its dead." *Commonwealth v. Wardwell,* 136
Mass. 164; *Harriman v. Nonpareil Co.,* 132 Iowa, 619; *State
v. Keenan,* 111 Iowa, 286; 25 Cyc. pages 401, 402, 404, and
405.

It is sometimes said that fair and honest criticism in
matters of public concern is privileged, but there is a mani-
fest difference between fair and honest criticism of public
events and privileged communications. In the
latter case the words may be defamatory, but
the defamation is excused or justified by reason of the occasion,
while in the former case the words are not defamatory of the
plaintiff, and are not libelous—the stricture or criticism is not
upon the person himself, but upon his work. In other words, it
is impersonal. *Bearce v. Bass,* 88 Me. 521 (34 Atl. 411, 51
Am. St. Rep. 446); *Burt v. Advertising Co.,* 154 Mass. 238
(28 N. E. 1, 13 L. R. A. 97). Criticism must be founded on
truth, and false statements or attacks on private character are
not permitted. *Clifton v. Lange,* 108 Iowa, 472; *Fry v. Ben-
nett,* 5 Sandf. (N. Y.) 54; *Haynes v. Clinton Ptg. Co.,* 169
Mass. 512 (48 N. E. 275).

3. SAME.

Newspapers are not exempt from these rules. *Morse v.
Printing Co.,* 124 Iowa, 707; *Republican Co. v. Conroy,* 5
Colo. App. 262 (38 Pac. 423). The trial court properly sub-
mitted the question of the truth of the state-
ments, and as to whether or not the same were
qualifiedly privileged, making the last depend upon whether or
not plaintiff was a candidate for office when either publication
was made, and we see no error in the instructions with refer-
ence thereto. There was ample testimony to justify the sub-
mission of these issues to a jury.

4. SAME: news-
papers.

II. The publications were, as we view it, both libelous
*per se.* *Wallace v. Homestead Co.,* 117 Iowa, 348; *Prewitt v.
Wilson,* 128 Iowa, 198; *Sheibley v. Ashton,*
130 Iowa, 195; *Morse v. Printing Co., supra;
Sunley v. Insurance Co.,* 132 Iowa, 123; *Dorn
v. Cooper,* 139 Iowa, 749.

5. SAME: second
publication:
malice.

And, as the last was not a mere repetition of the first, it in itself constituted a distinct cause of action. It is true that the second publication may also be considered upon the question of defendants' malice in making the first one. *Murray v. Galbraith,* 86 Ark. 50 (109 S. W. 1011); *Halley v. Gregg,* 74 Iowa, 564; *Ladwig v. Heyer,* 136 Iowa, 196.

The trial court instructed the jury that the second publication was not privileged; but that the first was conditionally privileged, provided the jury found that plaintiff

6. SAME: privilege: was a candidate for the office of mayor at
instruction.    the time it was made. This, among other
instructions, was given upon this proposition:

(12) Was the plaintiff, Ott, a candidate for the office of mayor of the city of Dubuque on the Citizens' Nonpartisan Ticket on or about March 3, 1910? You are charged on this point that to constitute such candidacy does not mean that he must have been in fact nominated for such office on said ticket, for the evidence shows that he was not so nominated, but it is sufficient to constitute him a candidate within the pleas of privilege if he was desirous of obtaining the nomination for said office, and held himself out as seeking the same. In considering this proposition in the light as above defined, it is for you to determine from all the evidence in the case whether or not the plaintiff Ott was such a candidate. The burden of proof that he was such a candidate is upon the defendants to establish by a preponderance of the credible evidence; and, if you find that he was not such a candidate, then the defense of privilege fails. If, however, you find that he was such a candidate, then the defense of privilege may be considered by you.

Upon the question of qualified privilege the court instructed:

(13) When a man becomes a candidate for public office, his character for honesty and integrity, and his qualifications and fitness for the position, are put before the public, and are

7. SAME: burden    thereby made proper subjects for comment,
of proof.        and all matters having a bearing on the character and fitness of a candidate for such office may be pub-

lished if they are in good faith, and on probable cause believed to be facts. Where a person, honestly believing that a candidate for public office is guilty of conduct affecting his fitness for the position to which he aspires, communicates that belief through a newspaper to the electors, whose support the candidate seeks, acting in good faith in the discharge of his duty to the public, such publication is privileged. In this case if you find from the evidence and a fair preponderance thereof that the article published on March 3, 1910, was so privileged, then the burden of proof is upon the plaintiff to show malice. If a party publishing an article did not honestly believe the facts published to be true, any claim of privilege would not be a protection to him. A man who knowingly makes false charges cannot take advantage of a privilege; and, if he had no reasonable cause for believing the statements to be true and the statements were false, it would amount in legal contemplation to a wanton statement, or a statement made without knowing or caring whether it was true or malicious.

(14) The term 'malice,' as employed in the definition of libel *per se*, does not necessarily mean hatred or ill will toward the person at whom the libel is directed, but the want of legal excuse for an act done to the injury of another amounts to such malice, without regard to the motive which prompted it, unless privileged or justifiable.

8. Same: malice.

(15) As bearing upon the question of malice in the publication of an article, under the plea of privilege, you must consider every fact and circumstance in evidence in the case as well as the article published, and from all such facts and circumstances, and the article itself, determine whether or not malice in the publication of the article has been proven. To apply the law to this case in considering the defense of privilege, it is for you to say from all the facts and circumstances whether or not the defendants published the article of March 3, 1910, in good faith, and for justifiable ends, believing the same to be true, and the burden of proof is upon the plaintiff, Ott, to show that malice existed on the part of the defendants in the publication of said article. If the plaintiff has so proven malice, then the defense of privilege fails. If he has not so proven malice, and you find plaintiff was a candidate for said office in 1910, then under the instructions heretofore given you it will be your duty to find that the plea of privilege as

to the article published on March 3, 1910, has been established, and is a complete defense, and exonerates the defendants from any liability because of the publication of said article on said date.

These instructions were manifestly correct. *Thompson v. Rake*, 140 Iowa, 232; *Hulbert v. Nonpareil Co.*, 111 Iowa, 490; *Harriman v. Nonpareil Co.*, 132 Iowa, 619; *Nichols v. Eaton*, 110 Iowa, 509; *Wallace v. Homestead Co.*, 117 Iowa, 348; *Jensen v. Damm*, 127 Iowa, 555; *Cherry v. Des Moines Leader*, 114 Iowa, 298; *Vial v. Larson*, 132 Iowa, 208.

No such confusion as to express and implied malice exists as to justify the complaints made by appellants' counsel. The defendants did not offer sufficient testimony in support of what is called their defense of conspiracy as found in the last division of their answer to justify the submission thereof to the jury. These considerations dispose of the vital and fundamental propositions in the case; but some rulings during the trial are complained of which demand further attention.

III. A juror was challenged for cause because of having formed and expressed an opinion as to the merits of the case. The ruling is sustained by so many cases that we need not set out the record, or do more than

9. JURORS: challenge.

cite the following: *Wilson v. Wapello County*, 129 Iowa, 77; *Croft v. Railroad Co.*, 134 Iowa, 411; *Harris v. Moore*, 134 Iowa, 704; *In re Hannaher's Will*, 155 Iowa, 73.

IV. In order to show that plaintiff was not a candidate, plaintiff was permitted not only to testify to the fact that he was not, but also to show declarations made by him to various persons, before any of the publications in question, to the effect that he was not and

10. LIBEL: evidence.

would not be a candidate. These declarations were admissible as showing plaintiff's state of mind at the time in question, and were in the nature of verbal acts which are generally admissible in evidence. Wigmore on Evidence, section 1790; *West v. Beck*, 95 Iowa, 520.

V. Complaint is made of the cross-examination of some

of defendants' witnesses; but we see no reason for interfering with the discretion lodged in the trial court in such matters. The nature of the 1908 campaign, as made by the contending parties, became a prominent feature of the case, and the cross-examination of defendants' witnesses did not exceed due bounds.

VI. Complaint is made of certain testimony offered by plaintiff to show how the publication affected some of the members of his family, and the following record was made:

Q. Do you know whether your wife and members of your family had read it? (Defendants object for the reason that no proper foundation has been laid, and otherwise incompetent, irrelevant, immaterial and hearsay.) By the Court: He may answer yes or no. (Defendants duly except.) A. Yes, sir. Q. Did they speak to you concerning it, and what was contained in it? (Defendants object as incompetent hearsay.) Plaintiff: This is not for any purpose so far as his wife and family are concerned, but the effect upon him, that's all. (Objection overruled, and defendants duly except.) A. Yes, sir. Q. What was the effect upon you of their conversation in regard to this article, and the manner in which they felt? (Defendants object as wholly incompetent, irrelevant, and immaterial. Objection overruled, and defendants duly except.) A. It was a crying bee at home when I came home. (Defendants move to strike out the answer for the reason urged in objection to the question. Motion overruled, and defendants duly except.) Q. Well, how did that condition at home affect you? (Defendants object as incompetent, irrelevant, and immaterial. Objection overruled, and defendants duly except.) A. It affected me mentally and every other way. (Defendants move that the answer be stricken out as wholly incompetent, irrelevant, and immaterial, and the improper conclusion of the witness. Motion overruled and defendants except.)

In this there was no error, for the reason that it was the reflex effect upon the plaintiff, growing out of the reading of the publication by the members of his family, which was proved. But a single case seems to hold such testimony inadmissible, and that was put upon the ground of insufficiency

of the pleadings; the court expressly refusing to pass upon the question as to whether it would be admissible in any case. See *Couch v. Mining Journal Co.,* 130 Mich. 294 (89 N. W. 936). The decision does not seem to be sound because mental suffering need not be alleged as special damages. Townshend on Slander and Libel, pages 271, 520. In the instant case damages for mental suffering and humiliation were asked, and we think the rulings admitting the testimony and limiting it to the purposes indicated were correct. The following cases support the ruling of the trial court: *Chesley v. Thompson,* 137 Mass. 136; *Enquirer Co. v. Johnston,* 72 Fed. 443 (18 C. C. A. 628); *Enos v. Enos,* 135 N. Y. 609 (32 N. E. 123); *Morey v. Morning Journal Ass'n,* 123 N. Y. 207 (25 N. E. 161, 9 L. R. A. 621, 20 Am. St. Rep. 730); *Brooks v. Harison,* 91 N. Y. 83; *Terwilliger v. Wands,* 17 N. Y. 54 (72 Am. Dec. 420); *Flam v. Lee,* 116 Iowa, 289.

VII. Defendants offered to show, in mitigation of damages, rumors and reports regarding plaintiff and his conduct in the previous political campaign, upon which they acted 12. SAME: mitiga- and which they believed to be true. Under tion: evidence. the rule existing in this state, a defendant, who publishes a libel as of his own knowledge and not upon the authority of others, cannot ordinarily show in mitigation of damages rumors or reports of the truth of the charge. *Marker v. Dunn,* 68 Iowa, 720; *Clifton v. Lange,* 108 Iowa, 472; *Blocker v. Schoff,* 83 Iowa, 265; *Wallace v. Homestead Co.,* 117 Iowa, 356. Of course, if such reports were so general and prevalent and had existed such a length of time before the publication as that they may have affected plaintiff's general character, they may doubtless be shown, not for the purpose of negativing defendants' malice, but as mitigating plaintiff's damages. No instruction on this theory was asked, and the rulings of the trial court were in accord with the principles we have announced.

VIII. Lastly, it is claimed that there was no testimony justifying a verdict against defendant Quigley. The evidence

shows that this defendant was proprietor and manager of
13. SAME: liabil- ity for libel. the paper, that the editor generally showed him his editorials, and that he (Quigley) may have seen the editorials in question or one of them before it was published, and the answer admitted that he (Quigley) was manager and had charge and control of the conduct of the paper. Under these facts, the defendants were jointly liable. *Jensen v. Damm*, 127 Iowa, 555; *Folwell v. Miller*, 145 Fed. 495 (75 C. C. A. 489, 10 L. R. A. [N. S.] 332, 7 Ann. Cas. 455); *Smith v. Utley*, 92 Wis. 133 (65 N. W. 744, 35 L. R. A. 620). There was no error in stating the issues to the jury. *Morrison v. Railway Co.*, 84 Iowa, 663. We have carefully gone over this voluminous record, and find no prejudicial error.

The judgment must therefore be, and it is, *Affirmed*.