**HARTMANN v. TIME, Inc.**

**Civil Action No. 4690.**

District Court, E. D. Pennsylvania.

Feb. 15, 1946.

674

Felix & Felix, of Philadelphia, Pa., for plaintiff.

Evans, Bayard & Frick, of Philadelphia, Pa. (Francis H. Scheetz, of Philadelphia, Pa., of counsel), for defendant.

KALODNER, District Judge.

In this action the plaintiff seeks to recover damages for an alleged libelous publication appearing in defendant's magazine "Life," dated January 17, 1944. The proceedings were begun on January 17, 1945, in the Common Pleas Court of Philadelphia County, Pennsylvania. Although the "Statement of Claim" filed therein set forth that both plaintiff and defendant were residents of New York, the defendant procured removal to this Court on the ground that the plaintiff was a resident of New Jersey. The plaintiff has not asserted otherwise, and the requisite jurisdictional amount being present, this Court has jurisdiction over the parties and the subject matter.

Prior to answer, the defendant filed its motion for summary judgment grounded upon two defenses, first, asserting the statute of limitations, and, second, applying the theory of res adjudicata. Affidavits have been filed by both parties, the plaintiff contending that there remain material issues of fact, and therefore, under Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. following section 723c, the motion may not be granted.

The plaintiff has filed a motion to amend his complaint, to which the defendant objects on grounds similar to those on which it bases its own motion, and, in addition, on the ground that the proposed amendment is incomplete, inaccurate, and misleading.

Taking first for consideration the defendant's motion for a summary judgment, it must be noted at the outset that Rule 56 conditions the granting of such a motion upon the absence of material questions of fact, except, of course, with respect to amount of damages. Consequently, attention must be directed to this condition in any analysis of the merits of defendant's motion.

With reference to this condition, it may be observed that we are not now concerned with the question as to whether the printed matter is in fact actionable. In answer to the defense invoking the statute of limitations, the plaintiff contends, in brief, that there remain material questions of fact, with respect to the date of publication, and with respect to the tolling of the statute of limitations by reason of the absence of the defendant from the state. It is further asserted that, "because some of these facts and other pertinent facts are particularly within the exclusive knowledge of the defendant, (the plaintiff) cannot present by affidavit all of the facts essential to justify the plaintiff's opposition to the defendant's motion."

However, after consideration I am of the opinion that the plaintiff's counter-affidavits are unavailing, either to show that there is a material question of fact, or that the defense to his claim is inadequate in law.

The plaintiff's first attack on the motion is founded upon the assertion that the statute was tolled by the absence of the de-

fendant from the jurisdiction. To support this assertion, an affidavit was filed in which it is stated that: "The defendant itself has claimed until quite recently that it was not within the jurisdiction of the Common Pleas Courts of Philadelphia County or of this Court as is evidenced by its contention in the case of William N. Barrett v. Time, Inc., Common Pleas Court No. 2, Philadelphia County, December Term, 1937, No. 2877, wherein the Court in Opinion filed July 19, 1938, stated that the defendant was not within the jurisdiction of the Court. Consequently, the Statute of Limitations in this jurisdiction could not run against the defendant until such time as it was within the jurisdiction." Further, the plaintiff has attached to this affidavit a letter from the Department of State of the Commonwealth of Pennsylvania indicating that an examination of its indices disclosed no corporation either foreign or domestic nor a registration under the provisions of the Fictitious Names Act bearing the title "Time, Inc."

Under the provisions of the Pennsylvania Foreign Corporations Act and the Fictitious Names Act,[1] a firm engaged in business in Pennsylvania without proper registration becomes subject to certain penalties, and such non-compliance constitutes a valid defense to any action brought by such firm, until registration is completed. Failure to register, however, does not make the defaulting organization any less amenable to process, and the fact of non-registration is not available to it as a defense. If the defendant were engaged in business in Pennsylvania, and subject to process under the Pennsylvania practice, it was not any less within the jurisdiction for failure to register. On this score, it is significant to note that the plaintiff's counter-affidavits do not assert that the defendant was not engaged in business in Pennsylvania or did not have a local office. Of course, the decision referred to is not binding upon either party in the instant case, and the statement that defendant was not within the jurisdiction is a conclusion which should be for the court to determine.

More important, the mere assertion that the defendant was not within the jurisdiction is insufficient, under Pennsylvania law, to toll the statute of limitations. In order to be effective for that purpose, the affidavit should contain evidence that the defendant was within the jurisdiction, but absented itself after the alleged cause of action accrued. Thus, Section 1, P.L. 112, May 22, 1895, 12 P.S. § 40, provides:

"In all civil suits and actions in which the cause of action shall have arisen within this state the defendant or defendants in such suit or action, who shall have become a non-resident of the state after said cause of action shall have arisen, shall not have the benefit of any statute of this state for the limitations of actions during the period of such residence without the state."

To dispel any doubt as to the proper construction of this statute, in Hunter v. Bremer, 1917, 256 Pa. 257, at page 264, 100 A. 809, at page 811, Ann.Cas.1918A, 152, the Supreme Court said:

"In considering the present statute * * *, in Bates v. Collum, 177 Pa. 633, 637, 35 A. 861, 862, 34 L.R.A. 440, 55 Am. St.Rep. 753, we said: 'It applies to "all civil suits * * * in which the cause of action shall have arisen within this state" (Shaffer's Est., 228 Pa. 36, 40, 76 A. 716). It affects all defendants "who shall have become nonresidents * * * after said cause of action shall have arisen"'—*meaning, necessarily, defendants who had a residence at the time the cause of action arose, else they could not 'become' nonresidents.*" (emphasis supplied.)

If the statute is at all applicable to corporate defendants, it would seem that the plaintiff's affidavit must, in order to bring the statute into operation, contain evidence that prior to the time the cause of action arose, the defendant was in the state in such a way as to make it amenable to process, for as stated in Hunter v. Bremer, supra, 256 Pa. at page 264, 100 A. at page 812, Ann.Cas.1918A, 152, the Act "contemplates simply a residence of such permanency that the person in question may be found here and served with ordinary legal process at any time, generally speaking. The existence of such a residence constitutes one a resident within the meaning of the act, and, on the other hand, its absence makes him a nonresident."

---

[1] Defendant, being a corporation organized under the laws of New York, would, if at all, be required to register under the Foreign Corporations Act, 15 P.S. § 2852—1001 et seq., but not under the Fictitious Names Act, 54 P.S. § 21. See Fictitious Names of Corporations or of Individuals in Corporate Form, 1930, 13 Pa.Dist. & Co.R. 524.

■ In my opinion, therefore, even assuming the propriety of the matter in plaintiff's counter-affidavits on this issue, no evidence is contained therein which raises a material question of fact, or operates to deprive the defendant of the benefit of the statute of limitations.[2] Plaintiff's affidavits are devoid of any evidence which would support an inference that the change of status required by the Act of 1895, supra, occurred.

Secondly, plaintiff contends that there remain material questions of fact with respect to the fact and date of publication.

The affidavits filed on behalf of the defendant disclose the following evidence: The content of the issue of "Life" dated January 17, 1944, was composed and edited in New York City. It was then sent to R. R. Donnelly & Sons, in Chicago, Illinois, during a period ending at 10 A.M. (C.W.T.) on January 9, 1944. At 11:30 A.M. (C.W.T.) that firm completed preparation of two sets of plates from which the copies of "Life" were to be printed. One set of plates was retained by Donnelly in Chicago, and printing was commenced there at midnight (C.W.T.), January 9, 1944. The second set of plates was forwarded to the Cuneo Eastern Press in Philadelphia, Pa., for the printing of additional copies. These plates were received by Cuneo at about noon (E.W.T.) January 10, 1944, and printing was started at 6 P.M. (E.W.T.).

The general release date for the issue of "Life" dated January 17, 1944 (a Monday), was January 14, 1944 (a Friday). "Life" is distributed to the public in two ways, by mail to subscribers, and over news stands. Mailing from Chicago to subscribers was accomplished beginning January 10, 1944, at about noon (C.W.T.) continuing through to 7 A.M. (C.W.T.), January 14, 1944. No part of the issue was mailed from Chicago after January 14, 1944, except miscellaneous copies for the purpose of replacing copies not received or received in a damaged condition, filling new or renewal subscriptions received or handled within a day or two after January 14, 1944, and complying with requests for the purchase of "back number" copies of the issue. Mailing from Philadelphia to subscribers commenced on January 12, 1944, at 6 P.M. (E.W.T.) and continued through to 6 P.M. (E.W.T.) on January 13, 1944. No part of the issue was mailed to subscribers from Philadelphia after that date.

Copies of the issue of "Life" dated January 17, 1944, destined for the news stands, were shipped to independent distributors and branches from Chicago beginning January 10, 1944, and ending January 13, 1944, at 10:35 P.M. (C.W.T.); shipments from Philadelphia were begun at 5 P.M. (E.W. T.), January 11, 1944, and were completed by 5 P.M. (E.W.T.) on January 13, 1944.

By January 13, 1944, all copies of the issue of "Life" printed in Philadelphia had been distributed to subscribers and distributors, physical production and distribution ending at 6 P.M. (E.W.T.), January 13, 1944. By January 14, 1944, all copies of the issue printed in Chicago had been distributed to subscribers and distributors, physical production and distribution ending at 7 A.M. (C.W.T.), January 14, 1944. Copies were mailed to subscribers and shipped to distributors under a schedule which assured receipt by subscribers, distributors and their branches on the general release date, January 14, 1944, except, as to Chicago, for the remote sections of the country. No copies were printed after completion of distribution on January 14, 1944. The general distribution comprised over 3,900,000 copies, and the issue was generally in the hands of subscribers and on sale at news stands on January 14, 1944.

The matter in the issue of "Life" dated January 17, 1944, of which the plaintiff complains is comprised of two articles appearing on pages fifteen to eighteen, inclusive. The article on page fifteen, entitled "U. S. Indicts Two Fascists," continuing through page seventeen, was joined to the article on page eighteen with the words "continued on next page." The article on page eighteen " 'Peace Now' Is New Propaganda Drive to Prevent U. S. Victory," was joined to the preceding article with the words "U. S. Indicts Fascists (continued)." In the latter article, which plain-

---

[2] The plaintiff did not cite any statute of Pennsylvania tolling the statute of limitations, but the statute discussed above is the only such statute in Pennsylvania that has been called to my attention. Since the Pennsylvania statute of limitations, otherwise, contains no exceptions, if the Act of 1895 above referred to has no application merely because the defendant is a New York Corporation, then there is nothing to toll the limitations statute, and the averment that defendant was not within the jurisdiction is immaterial.

tiff maintains is libelous in itself, the name and picture of the plaintiff figured prominently. In addition, the table of contents, on page thirteen, listed, under the heading "The Week's Events," the title "Fascists Indictments and 'Peace Now,'" followed by the page number "15." The complaint, of course, denies that the plaintiff was a fascist or that he was indicted. The defendant clearly indicates that the connection between the articles as described was erroneous, and in the affidavits filed on its behalf it discloses that corrections were made after discovery of the error, on the evening of January 11, 1944, in Philadelphia and on the same date in Chicago, so that no copies containing the connective phraseology were printed or distributed after that change. For the purpose of the application of the statute of limitations, however, the importance of such evidence is amenused by the fact that, whereas the two articles were also joined together in the table of contents, the affidavits do not indicate whether any correction was made there. It cannot, therefore, be said that the alleged libelous association of the two articles was completely removed by the corrections made on January 11, 1944, and the significance and effect of the matter in the table of contents, it seems to me, would be a jury question.

█ Nevertheless, the affidavits filed on plaintiff's behalf, fail to disclose a material issue of fact as to the date of publication. The affiant, plaintiff's counsel, avers, in the one affidavit, that "he believes that the defendant published copies of the magazine containing the alleged libelous matter on or after January 17, 1944, as is admitted in the affidavit of Howard Bagwell. * * *" The reference, an examination of that affidavit discloses, is to the statement therein pertaining to miscellaneous copies mailed from Chicago, more fully discussed above. So worded, the affidavit raises no question of fact, for the fact of such mailing, as plaintiff's affidavit points out, is admitted. However, if the affiant's statement be given a broader construction, i. e., he believes that the defendant published copies of the magazine on and after January 17, 1944, that too is of no value as evidence. State of Washington v. Maricopa County, 9 Cir., 1944, 143 F.2d 871.

In another counter-affidavit, plaintiff's counsel avers that he examined, at the Philadelphia Public Library, Logan Square, Philadelphia, Pa., a copy of "Life" dated January 17, 1944, containing the alleged libelous statements; that he was informed by a Miss Hill of the Periodical Room there that the said copy of "Life" was received on or after January 17, 1944; and that said copy and all other copies of "Life" are received by direct subscription from defendant.

█ I think it manifest that the affidavit, insofar as it records the statements of the librarian, is of no probative force, since it is clearly hearsay, and must be disregarded under Rule 56(e), Federal Rules of Civil Procedure. Seward v. Nissen, D.C. Del., 1942, 2 F.R.D. 545, 546. Moreover, no question of fact is raised by the statement that affiant read a copy of "Life" dated January 17, 1945, containing the alleged libelous matter. The fact may be accepted for it is not denied nor is it contradictory to anything in defendant's affidavits. At most, it raises a question of law.

█ Further, contained in the affidavit in which affiant declared he believed the magazine in controversy was published on and after January 17, 1944, and in which the issue as to the presence of defendant within the jurisdiction was raised, is a statement to the effect that the defendant republished the alleged libel after January 17, 1944, by reference, in the issue of "Life" dated February 7, 1944. While this particular averment must be dealt with in greater detail later, since it is the subject of plaintiff's motion to amend, I think it sufficient to note at this point that the questions created, whether such "republication" constitutes a new cause of action and its significance with respect to the statute of limitations, are matters of law and not of fact.

█ The affidavit referred to concludes with the statement "that he cannot, because some of these facts and other pertinent facts are particularly within the exclusive knowledge of the defendant, present by affidavit all of the facts essential to justify the plaintiff's opposition to the defendant's motion." Plainly, the plaintiff is banking on Rule 56(f), Federal Rules of Civil Procedure. However, the mere averment of exclusive knowledge in the other party, it seems to me, is not adequate. Plaintiff has not attempted to show what facts are within defendant's exclusive knowledge; rather, his statement is vague and indefinite. Moreover, he has not

shown that any steps were taken to procure the desired information pursuant to the discovery procedure permitted by the rules. See 3 Moore's Federal Practice (1938) Sec. 56.07; Seward v. Nissen, supra. Also, the plaintiff has not indicated that he is desirous of taking advantage of the discovery procedures. Plaintiff's position is thus distinguishable from the familiar case of Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 1942, 130 F.2d 1016, wherein the plaintiffs' affidavits warranted refusal of summary judgment so that they might have the opportunity to take the depositions and to have the discovery which they sought.

Plaintiff also contends that, upon trial, the obligation rests upon him to prove that the alleged libelous matter was seen, read, and understood by third persons, for otherwise there is no cause of action, and, since the defendant's affidavits do not show such facts the motion for summary judgment may not be granted. However, it requires undue straining of the imagination to assume that over 3,900,000 copies of the magazine, mailed to subscribers and widely distributed to news stands, did not hit their mark. It can hardly be doubted that the plaintiff would not be required to produce such evidence. See Holden v. American News Co., D.C.E.D.Wash., 1943, 52 F.Supp. 24, 32; Brian v. Harper, 1919, 144 La. 585, 80 So. 885, 886.

Coming now to the substantive element of the motion for summary judgment, Section 1 of the Act of March 27, 1713, 12 P.S. § 31, provides, inter alia, that actions on the case for words must be brought "within one year next after the words spoken, and not after." Section 35 of the Act of April 25, 1850, 12 P.S. § 32, extends that Act "to all cases of slander or libel, whether spoken, written or printed." These statutes obviously accentuate the importance of the date of publication of the alleged libel. In paragraph sixteen of the complaint, the allegation is that the asserted libelous matter was published on January 17, 1944. Since these proceedings were instituted on January 17, 1945, defendant's contention that the actual publication date was prior to January 17, 1944, crystallizes the issue raised by the motion for summary judgment.

The term "publication" as used in the law of defamation is a term of art, so to speak, and generally, defamatory matter is "published" only upon "its communi-cation intentionally or by a negligent act to one other than the person defamed." Restatement of the Law of Torts, Sec. 577. See Summit Hotel Co. v. National Broadcasting Co., 1939, 336 Pa. 182, 195, 8 A.2d 302, 124 A.L.R. 968. The mere speaking or writing of defamatory words, it is well settled insofar as civil actions are concerned, is not actionable unless such words are heard or read and understood by persons other than the defamed; hence, the cause of action accrues only upon the satisfaction of this condition. The fact that the person defamed had no knowledge of the defamation, until shortly before the action is brought, is of no consequence. "Since the gravamen of the offense is not the knowledge by the plaintiff nor the injury to his feelings but the degrading of reputation, the right (of action) accrued as soon as the paper was exhibited to third persons in whom alone such repute is resident." Forman v. Mississippi Publishers Corporation, 1943, 195 Miss. 90, 14 So.2d 344, 347, 148 A.L.R. 469. In addition, it is significant that knowledge of the defamation by the plaintiff is not a relevant factor under the Pennsylvania statute of limitations, set out above, which limits the time for instituting proceedings without exception therefor.

The legal problem now before the Court, the date of "publication" for the purpose of invoking the statute of limitations, is, of course, to be determined according to Pennsylvania law, for the plaintiff alleges a cause of action arising in Pennsylvania, and the matter is in this Court solely on grounds of diversity of citizenship. While there are a fair number of decisions by the Pennsylvania judiciary in cases involving libels published in newspapers, and although these decisions have carefully developed a part of the law of libel, no Pennsylvania case has been called to my attention which determines the date of "publication" of a newspaper or magazine.

The law of defamation pertaining to the publication of a libel, as it has been recognized in most of the treatises and applied for generations by the English and some of the American Courts, is summarized in the Restatement of the Law of Torts, Sec. 578, Comment (b):

"Each time a libelous article is brought to the attention of a third person, a new publication has occurred, and each publication is a separate tort. Thus, each time

a libelous book or paper or magazine is sold, a new publication has taken place which if the libel is false and unprivileged, will support a separate action for damages against the seller. So, too, each time a libelous article is reprinted or redistributed, a new publication is made and a fresh tort is committed."

There is discernable, however, to a marked degree, a reluctance among the modern courts to apply that law when confronted with a controversy involving large distributions of printed matter such as are made by present day newspaper and magazine publishers. This turn in the law is highlighted in the case of Age-Herald Publishing Co. v. Huddleston, 1921, 207 Ala. 40, 92 So. 193, at page 196, 37 A.L.R. 898, where the court said:

"These old common law principles undoubtedly had their origin in relation to the single acts of individuals, in a primitive society, and cannot, either as a matter of principle or common sense, be applied without qualification to the publication of modern newspapers."

The rule of law to be applied in such circumstances is that the one issue of a newspaper or magazine, although it consists of thousands of copies widely distributed, gives rise to one cause of action, there being but one publication, and the statute of limitations runs from the date of such publication. The number of copies is considered as aggravating the seriousness of the publication, and therefore, being evidence of the extent of the injury, goes only to the matter of damages. Winrod v. McFadden Publications, Inc., D.C.N.D.Ill. 1945, 62 F.Supp. 249, 250; Forman v. Mississippi Publishers Corporation, supra; Backus v. Look, Inc., D.C.S.D.N.Y., 1941, 39 F.Supp. 662; Cannon v. Time, Inc., D.C.S.D.N.Y., 1939, 39 F.Supp. 660; Means v. MacFadden Publications, Inc., D.C.S.D.N.Y., 1939, 25 F.Supp. 993; Wolfson v. Syracuse Newspapers, Inc., 1938, 254 App.Div. 211, 4 N.Y.S.2d 640, affirmed per curiam, 1939, 279 N.Y. 716, 18 N.E.2d 676; Fried, Mendelson & Co. v. Halstead, Ltd., 1922, 203 App.Div. 113, 196 N.Y.S. 285; Age-Herald Publishing Co. v. Huddleston, supra; Brian v. Harper, supra; but see Holden v. American News Co., supra; Renfro Drug Co. v. Lawson, 1942, 138 Tex. 434, 160 S.W.2d 246, 146 A.L.R. 732. In Pennsylvania the number of copies is taken into consideration in assessing damages: Chambers v. Philadelphia Inquirer, 1930, 14 Pa.Dist. & Co.R. 421; Reed v. Patriot Co., 1939, 35 Pa.Dist. & Co.R. 466.

In Sutherland on Damages (3rd Ed., 1904) Sec. 1207, at page 3490, it is said: "All the utterances of the same charge constitute one slander, as all the copies of a newspaper containing a libel constitute one publication. The frequency of the utterances or the number of issues (copies) of a newspaper may be shown to prove the extent of publicity given to the defamatory charge; but only one recovery is allowed." Further, it has been held, whenever the question was raised, that the later mailing of miscellaneous copies, such as occurred here, does not amount to an independent ground of action, not being a new publication. Backus v. Look, Inc., supra; Cannon v. Time, Inc., supra; McGill v. Time, Inc., March 23, 1945, decided in the Circuit Court of Cook County, Illinois [3]; Hartmann v. Time, Inc., Index No. 5008–1945, —— Misc. ——, 60 N.Y.S.2d 209, decided October 19, 1945; (1945) 59 Harv.L.Rev. 136; see also Murray v. Galbraith, 1908, 86 Ark. 50, 109 S.W. 1011, 126 Am.St.Rep. 1078; but see Winrod v. McFadden Publications, Inc., supra, 62 F. Supp. at page 256.

These decisions, while the reasons therefor are variously given by the different courts, are grounded chiefly upon the practical realization that, under the doctrines expounded in the Restatement, a multiplicity of suits would result, and the purpose of the statute of limitations would be avoided. Although all the decisions cited were not rendered without express dissent, the views adopted have, in the main, been favorably commented upon: (1945) 59 Harv.L.Rev. 136; (1940) 38 Mich.L.Rev. 552; (1939) 6 Pitt.L.Rev. 46; (1938) 52 Harv.L.Rev. 167; (1923) 23 Col.L.Rev. 193; (1910) 10 Col.L.Rev. 150.

A careful examination of the cases leads to the conclusion that the decided weight of authority in this country is, where large distributions of published matter are involved, that the cause of action accrues, for the purpose of the statute of limitations, upon the first publication, when the issue goes into circulation generally. I agree with the practical considerations of the majority.

---

[3] No opinion for publication.

■ Accordingly, I am of the opinion that the plaintiff's cause of action accrued prior to January 17, 1944, and is therefore barred by the statute of limitations.

■ Coming now to the plaintiff's motion to amend his complaint, it may be said that if, upon facts supplied in affidavits, an amendment is justified, that amendment ought not to be prevented by entry of a final summary judgment on defendant's motion. Cf. Seaboard Terminals Corporation v. Standard Oil Co. of New Jersey, 2 Cir., 1939, 104 F.2d 659, 660; Rossiter v. Vogel, 2 Cir., 1943, 134 F.2d 908, 912.

As I stated earlier, the plaintiff, in his affidavits, asserts that the alleged libelous matter appearing in the issue of "Life" dated January 17, 1944, was republished "by reference" in the issue of "Life" dated February 7, 1944. The present motion was filed May 17, 1945, obviously relying on Rule 15, Federal Rules of Civil Procedure. The defendant has filed a number of affidavits, similar to those filed in support of its motion for summary judgment, which show that general distribution and circulation of the issue of "Life" dated February 7, 1944, was completed by February 5, 1944. On the principles already announced and applied to the issue of "Life" dated January 17, 1944, a fortiori the statute of limitations had run by the time the motion to amend was filed.

■ ■ Without considering whether the alleged offensive material printed in the issue of "Life" dated February 7, 1944, is actionable, it stands to reason that if it is actionable, the amendment, which in effect alleges a new publication, is barred by the statute of limitations. The rule is settled, in Federal and Pennsylvania courts, not inconsistent with Rule 15(c), that an amendment stating a new cause of action on which the statute of limitations has run may not be permitted. Hammond-Knowlton v. United States, 2 Cir., 1941, 121 F.2d 192, certiorari denied 1941, 314 U.S. 694, 62 S.Ct. 410, 86 L.Ed. 555; Brown v. New York Life Ins. Co., D.C. N.J., 1940, 32 F.Supp. 443, 444; see Colburn v. Birr, D.C.N.D.Ill., 1945, 4 F.R.D. 391; 17 Hughes, Federal Practice (1940)

Sec. 20901; Stoner v. Erisman, 1903, 206 Pa. 600, 56 A. 77; Kowalewski v. Markowski, 1926, 86 Pa.Super. 27, 29. See Leland v. Firemen's Ins. Co., 1937, 127 Pa.Super. 533, 540, 193 A. 475. The relation back provided for in Rule 15(c) applies, as it is clearly stated therein, only when the asserted claim or defense arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading. The proposed amendment, however, does not set up a new claim on the same conduct or occurrence as that alleged in the original complaint, the publication of the issue of "Life" dated January 17, 1944, nor is it a new statement or clarification of the matter therein alleged; rather it seeks recovery upon a new and distinct occurrence, upon a new and separate printing, circulation and publication of alleged libelous matter on February 7, 1944, and this constitutes a new cause of action. See Means v. MacFadden Publications, supra, 25 F.Supp. at page 995; Hartmann v. Time, Inc., decided October 19, 1945, by Botein, J., Index No. 5008-1945, —— Misc. ——, 60 N.Y.S.2d 209.

■ This much may be said for the matter contained in the amendment, under the Pennsylvania practice subsequent statements, whether actionable or not, whether before action brought or not, whether beyond the statute of limitations or not, so long as they are confined to expressions of the same nature or impute the same charge as those laid in the declaration, may be introduced in evidence at the trial for purpose of showing malice. Shock v. McChesney, 1799, 2 Yeates, Pa., 473; Wallis v. Mease, 1811, 3 Bin., Pa. 546; Kean v. McLaughlin, 1816, 2 Serg. & R., Pa., 469; Eckart v. Wilson, 1823, 10 Serg. & R., Pa., 44, 53; McAlmont v. McClelland, 1826, 14 Serg. & R., Pa., 359, 361; Elliott v. Boyles, 1857, 31 Pa. 65. Recovery may not be had directly upon such words, but only indirectly, as they evince the malevolence of the original utterance, and proper instructions must be given to the jury. Tilghman, C. J., in Wallis v. Mease, supra, 3 Bin. at page 550. This would perforce be true where the subsequent words are not actionable in themselves, or although actionable, are barred in some way.[4]

---

[4] The Pennsylvania rule is based on the view that the defendant is not surprised, since the same charge was laid in the declaration. Of course, if the words are actionable and not barred, another action may be brought to obtain direct recovery; or the complaint may be amended in the first suit to conform to the evidence and direct recovery may be had.

Since the matter in the amendment is admissible in evidence, but not as a new cause of action for which direct damages may be awarded, it would ordinarily be includable in the complaint. It is no objection that the amendment contains only a part and not the whole of the article printed in the issue of "Life" dated February 7, 1944. If, as here, the part omitted amounts to an apology, defendant may show that in mitigation; in any case, at the time of proof, plaintiff may be required to submit the whole article, see Commonwealth v. Swallow, 1898, 8 Pa. Super. 539, 607, or defendant could supply the omission in its answer.

However, since both the original complaint and the proposed amendment are barred, and since no material question of fact or defense is raised in the amendment, the amendment would accomplish nothing.

Finally, the defendant contends that the matter alleged in the complaint and in the proposed amendment is res adjudicata. This argument is based upon judgments rendered in actions instituted by the instant plaintiff against this defendant in New York (Index No. 5008-1945, October 26, 1945, New York Supreme Court, Part III) and in the District of Columbia (Civil Action 27, 377, April 30, 1945, District Court for the District of Columbia). In both cases, plaintiff originally alleged publication of libelous matter in the issue of "Life" dated January 17, 1944, but in the former case the original complaint was amended to include the alleged libelous publication in the issue of "Life" dated February 7, 1944. In the New York action, the amended complaint was dismissed as being barred by the statute of limitations, and in the District of Columbia action, defendant's motion for summary judgment was granted.

The plaintiff contends that he sued in each jurisdiction only for the tort committed there. I assume he sought to follow the procedure, except on a wider scale, adopted by the plaintiff in O'Reilly v. Curtis Publishing Co., D.C.Mass., 1940, 31 F. Supp. 364. That the tort is committed where the libel is published is apparent, Campbell v. Willmark Service System, 3 Cir., 1941, 123 F.2d 204, 206, and, of course, the law of the place where the tort is committed controls.

However, I have read the complaints in both actions, and, despite the earnest expression of plaintiff's intentions, I think that in both cases the complaints were so broadly worded as to include not only the torts allegedly committed in those jurisdictions, but everywhere else as well. For example, in the District of Columbia action, it was alleged: "3. * * * The said magazine has a circulation of approximately four million (4,000,000) copies weekly and is circulated throughout the continental United States and in foreign countries as well." Similarly, the amended complaint in the New York action alleges that the magazine was distributed and read in the United States and "in all parts of the City and State of New York as well as most of the civilized countries of the entire world." In neither complaint are there to be found words limiting the scope of recovery to the particular jurisdiction; on the contrary, in the District of Columbia, it was alleged that as a result of the publication his reputation among students at Columbia and Harvard Universities was injured; obviously this is an allegation of injury in New York and Massachusetts, since there is nothing to indicate whether such students formulated their impressions as a result of the publication in the District of Columbia. Even giving the plaintiff the benefit of his word, there is nothing to indicate that recovery was sought only upon the publication in New York, in the one case, or only in the District of Columbia, in the other.

The judgments in both cases were final, and the pleadings are no longer subject to narrowing by amendment. The fact that appeals have been filed is not obstructive of the doctrine, since I have not found, nor has it been called to my attention, that in those jurisdictions the filing of an appeal vacates the judgment. Restatement, Judgments, Sec. 41, Comment (d), and Sec. 44. Nor is it decisive that these actions were begun before or at about the same time as the instant proceeding. Restatement, Judgments, Sec. 43. Since the complaints therein are broad enough to include the instant action both the complaint and the proposed amendment are already adjudicated. Restatement, Judgments, Sec. 48.

Accordingly, it is my opinion that the defendant's motion for summary judgment should be granted, and plaintiff's motion to amend his complaint should be denied.